NO. 4-96-0728

                          IN THE APPELLATE COURT

                                OF ILLINOIS

                              FOURTH DISTRICT

In the Matter of ARLETTA F. ROBINSON,   )    Appeal from

a Person Found Subject to Involuntary   )    Circuit Court of

Admission,                              )    Vermilion County

THE PEOPLE OF THE STATE OF ILLINOIS,    )    No. 96MH28

          Petitioner-Appellee,          )

          v.                            )    

ARLETTA F. ROBINSON, a/k/a LONDA        )    Honorable

STRICKLAND,                             )    Joseph C. Moore,

          Respondent-Appellant.         )    Judge Presiding.

                                     

          JUSTICE GREEN delivered the opinion of the court:

          On August 26, 1996, following a hearing in the circuit

court of Vermilion County, the court entered two separate orders

(1) finding that respondent, Arletta F. Robinson, was in need of

involuntary admission to the Department of Mental Health and

Developmental Disabilities at the George A. Zeller Mental Health

Center (Zeller) (405 ILCS 5/3-700 (West 1994)), and (2) directing

the staff at Zeller to administer psychotropic medication to her

(405 ILCS 5/2-107.1 (West Supp. 1995)).  Respondent appeals,

contending (1) certain defects in the State's petitions for

involuntary commitment and administration of psychotropic

medication, and the single proceeding held thereon, violated her

procedural due process rights; (2) she was denied effective

assistance of counsel; and (3) the evidence was insufficient to

support the court's order directing involuntary commitment and

administration of psychotropic medication.

          We affirm in part and reverse in part.

          Respondent's procedural due process claims concern

violations of the statutes that govern (1) proceedings on a

petition for administration of psychotropic medication (405 ILCS

5/2-107.1(a)(1), (a)(2) (West Supp. 1995)) and (2) proceedings on

a petition for involuntary commitment (405 ILCS 5/3-601, 3-609

(West 1994)).  The State concedes that all statutory violations as

alleged by respondent have occurred but claims those errors should

be deemed waived as respondent failed to object at the hearing, no

prejudice had resulted, and there had been substantial compliance

with the appropriate provisions of the Mental Health and

Developmental Disabilities Code (Code) (405 ILCS 5/1-100 et seq.

(West 1994)).  As we will discuss, we decline to apply the waiver

doctrine to issues concerning the petition for administration of

psychotropic medication and the hearing held on that petition.  As

to issues concerning the petition for involuntary commitment, we

apply the waiver doctrine.

          The statutory provisions governing petitions for

administration of psychotropic medication at issue here state as

follows:

               "(1) Any person 18 years of age or older,

          including any guardian, may petition the

          circuit court for an order authorizing the

          administration of psychotropic medication to a

          recipient of services.  The petitioner shall

          deliver a copy of the petition, and notice of

          the time and place of the hearing, to the

          respondent, his or her attorney, and the

          guardian, if any, no later than 10 days prior

          to the date of the hearing.  The petition may

          include a request that the court authorize

          such testing and procedures as may be

          essential for the safe and effective

          administration of the psychotropic medication

          sought to be administered, but only where the

          petition sets forth the specific testing and

          procedures sought to be administered.

               (2) The court shall hold a hearing within

          14 days of the filing of the petition. 

          Continuances totaling not more than 14 days

          may be granted to the recipient upon a showing

          that the continuances are needed in order to

          prepare adequately for a hearing under this

          Section.  The court may, in its discretion,

          grant additional continuances if agreed to by

          all parties.  The hearing shall be separate

          from a judicial proceeding held to determine

          whether a person is subject to involuntary

          admission."  (Emphasis added.)  405 ILCS 5/2-

          107.1(a)(1), (a)(2) (West Supp. 1995).

          Here, there is no dispute that respondent did not receive

a copy of the petition for administration of psychotropic

medication or notice of hearing 10 days prior to the date of the

hearing as the petition was filed on August 26, 1996, the day of

the hearing originally set for the petition for involuntary

commitment.  The August 26, 1996, hearing proceeded on both the

petitions for involuntary commitment and administration of

psychotropic medication.  Thus, respondent did not receive a

"separate" hearing on the issue of administration of psychotropic

medication.

          The transcript of that hearing indicated respondent's

appointed counsel announced he was ready for trial.  Respondent

never objected to the State's failure to serve her with a copy of

the petition for administration of psychotropic medication or the

notice of hearing and never objected to a single hearing held on

the petitions for involuntary commitment and administration of

psychotropic medication.

          The State maintains that trial counsel's failure to

object requires the application of the waiver doctrine when the

record establishes no prejudice occurred by any of the procedural

errors and there was substantial compliance with the Code.  The

State relies on a line of cases where the Supreme Court of Illinois

has held that the trial court's failure to strictly comply with

notice requirements in involuntary commitment proceedings did not

require reversal where the respondent failed to object and the

respondent had actual notice of the proceedings.  In re Splett, 143

Ill. 2d 225, 231-32, 572 N.E.2d 883, 886 (1991); In re Nau, 153

Ill. 2d 406, 419-20, 607 N.E.2d 134, 140-41 (1992).  In Splett, the

respondent did not receive formal notice of hearing but was present

at the hearing and was represented by counsel who actively

presented a defense.

          Subsequently, the supreme court similarly held that

strict compliance with the requirement of a written

predispositional report (Ill. Rev. Stat. 1989, ch. 91½, par. 3-810)

in involuntary commitment proceedings was unnecessary where the

respondent failed to object to the lack thereof and the purpose of

the requirement was substantially fulfilled by oral testimony.  In

re Robinson, 151 Ill. 2d 126, 134, 601 N.E.2d 712, 717 (1992). 

Most recently, the supreme court in In re C.E., 161 Ill. 2d 200,

225-27, 641 N.E.2d 345, 356-57 (1994), applied Splett in holding

that the trial court's failure to strictly comply with notice

requirements in proceedings to administer psychotropic medication

did not amount to a due process violation where the respondent had

actual notice of the proceedings and ample opportunity to prepare

a defense.

          Here, unlike Splett and its progeny, we do not believe

the procedural defects can be deemed harmless or that respondent

had actual notice of the petition for psychotropic medication with

ample opportunity to prepare for a defense.  The evidence indicates

respondent was present with her attorney at the August 26, 1996,

hearing to proceed on the involuntary commitment petition.  Thus,

respondent had no notice of the petition for administration of

psychotropic medication until the day of the hearing and had no

opportunity to prepare a defense.

          The State maintains that no prejudice occurred by the

total lack of notice of the petition for administration of

psychotropic medication as respondent and counsel actively

participated in the proceedings.  However, we cannot determine from

the record that counsel's performance indicates he had an

opportunity to prepare for a hearing on the petition for

administration of psychotropic medication.

          Moreover, in enacting the requirement of "separate"

hearings for petitions for involuntary commitment and

administration  of  psychotropic  medication  under  section 

2-107.1(a)(2) of the Code (405 ILCS 5/2-107.1(a)(2) (West Supp.

1995)), the legislature apparently intended to ensure that

psychotropic medication petitions are not just simply appended to

involuntary commitment petitions.  Based on the notice

requirements, if followed, an involuntary commitment proceeding

would have to be held within five days of filing the petition (405

ILCS 5/3-611 (West 1994)), where administration of psychotropic

medication proceedings could not be held any earlier than 10 days

after filing the petition (405 ILCS 5/2-107.1(a)(1) (West Supp.

1995)).  Thus, separate hearings would have to be held.  Here,

where respondent had no notice of the administration of

psychotropic medication proceedings, we do not believe the

"separate" hearing requirement has been substantially complied with

by the court entering separate findings on each petition.  The

decision in In re Herbolsheimer, 272 Ill. App. 3d 140, 650 N.E.2d

287 (1995), is not controlling here.  There, the third district

held that a combined hearing on petitions for involuntary

commitment and administration of psychotropic medication was not

error.  However, the Herbolsheimer case was decided prior to the

enactment of section 2-107.1(a)(2) of the Code expressly requiring

separate hearings.

          Given our decision that respondent's failure to object to

defects in the administration of psychotropic drug proceedings does

not amount to a waiver on review, we further conclude that these

errors require us to reverse and vacate the court's medication

order.  This court in In re Carmody, 274 Ill. App. 3d 46, 653

N.E.2d 977 (1995), held that the trial court erred in ordering the

administration of psychotropic medication following a finding that

the respondent was in need of hospitalization when no formal

petition for the administration of medication had been filed,

thereby depriving the respondent of proper notice.  This court

explained that in order to proceed on a petition for administration

of psychotropic medication, it was implicit under the former

section 2-107.1 of the Code (see 405 ILCS 5/2-107.1 (West 1992))

that (1) a petition be filed prior to the date of the hearing and

(2) the trial court provide notice to respondent of the hearing. 

Absent these requirements, the trial court is without authority

under section 2-107.1 of the Code to order the administration of

psychotropic medication.  Carmody, 274 Ill. App. 3d at 54, 653

N.E.2d at 983.  The Carmody holding applies here, as the

requirements stated in Carmody have expressly been made part of the

notice requirement of the amended section 2-107.1(a)(1) of the Code

(405 ILCS 5/2-107.1(a)(1) (West Supp. 1995)) applicable here.

          As we are vacating the court's medication order, we need

not decide whether respondent received ineffective assistance of

counsel based on counsel's failure to object to the defects as

discussed in the administration of psychotropic medication

proceeding, nor do we need to address the sufficiency of the

evidence to support such an order.

          Respondent also challenges the form of the petition for

involuntary commitment and whether she received formal service of

the petition with notice of hearing.  The record indicates that two

petitions for involuntary commitment were filed.  The first

petition was filed on August 22, 1996, by a Danville police officer

and erroneously provided that the petition was being filed on

grounds that respondent was a patient who continues to be subject

to involuntary commitment pursuant to section 3-813 of the Code

(405 ILCS 5/3-813 (West 1994)).  However, the statement in support

of the petition indicated that respondent came to the Danville

police station on the evening of August 20, 1996, apparently

because she was homeless and in need of shelter.  Respondent was

transported to United Samaritans Medical Center by the reporting

officer, as he believed respondent was unable to care for herself

and was a danger to herself.

          The petition provided no answer in the space for listing

the "names and addresses of the spouse, parent, guardian, and close

relative or, if none, known friend."  The petition also left blank

the space provided for proof of service of the petition upon

respondent.  Attached to the petition were two medical certificates

establishing that respondent was examined by two psychiatrists,

once on August 21, 1996, and again on August 22, 1996.  Those

examinations established that respondent suffered from

schizophrenia.

          On August 26, 1996, the day of the hearing, a second

petition for involuntary admission was filed, that one indicating

that admission was requested by court order pursuant to section 

3-700 of the Code (405 ILCS 5/3-700 (West 1994)).  As in the first

petition, the second petition left blank the names and addresses of

family and friends to be contacted and proof of service of the

petition.

          Attached to the petition was a copy of the first petition

and a handwritten notation near the proof of service portion that

stated, "[Patient] refuse[s] to sign upon [admission] to unit.  8-

21-96 per V. Hutchinson [R.N.]  8-23-96 Smith [R.N.]"  Also

attached to the petition was a copy of an extensive history and

assessment of respondent prepared by a social worker on August 22,

1996.

          The State acknowledges that the petitions were defective

in that (1) neither included the names and addresses of any

relative or close friend or explained why none were listed as

required by section 3-601(b)(2) of the Code (405 ILCS 5/3-601(b)(2)

(West 1994)), (2) neither contained a signed proof of service

indicating petitioner received a copy of the petition within 12

hours after admission as required by section 3-609 of the Code (405

ILCS 5/3-609 (West 1994)), and (3) both contained conflicting

statutory authority under which the State was proceeding for

involuntary admission.  Furthermore, the record does not prove that

respondent received formal notices of hearing as required by

section 3-611 of the Code (405 ILCS 5/3-611 (West 1994)).  The

State contends that these issues are waived, as respondent failed

to raise them to the trial court and no prejudice had resulted.  We

agree with the State.

          In In re Adams, 239 Ill. App. 3d 880, 607 N.E.2d 681

(1993), this court declined to apply the waiver doctrine to bar

consideration of an alleged error in a petition for involuntary

commitment in failing to provide names and addresses of the

respondent's family or friends or explain why none were listed as

required by section 3-601(b)(2) of the Code (Ill. Rev. Stat. 1991,

ch. 91½, par. 3-601(b)(2)).  This court found waiver was

inappropriate there, as the error was apparent from the face of the

record, liberty interests were involved, and the error could be

considered prejudicial.  Based on the supreme court's decision in

Nau, this court expressly held that failure to strictly comply with

the requirement of the petition to list names of relatives or

friends or indicate a diligent attempt to do so does not always

require reversal if it could be shown that no prejudice to the

respondent had occurred.  Because the error there may have been

prejudical to the respondent, the court reversed the involuntary

commitment order.  Adams, 239 Ill. App. 3d at 885, 607 N.E.2d at 684.

          Similarly, in In re Ellis, 284 Ill. App. 3d 691, 694, 672

N.E.2d 893, 894-95 (1996), the Third District Appellate Court held

it was reversible error in involuntary commitment proceedings for

the petition to fail to list names and addresses of the

respondent's family or friends or a statement of diligent inquiry,

particularly where the respondent's mother had maintained contact

with the mental health facility.

          We conclude the instant case is distinguishable from

Adams and Ellis as here, even though no names of family or friends

are listed on the petition or an explanation why none are listed,

an extensive report of respondent's history was attached to the

second petition for involuntary commitment.  This report indicated

that respondent refused to give a personal history and had no known

family or friends, except a sister named Ethel Reed.  Respondent

was presently refusing to acknowledge Reed was her sister and had

no "supportive family contact."  Reed was last known to be living

in Danville, Illinois.  We believe that based on Splett and Nau,

failure to strictly comply with section 3-601(b)(2) of the Code

does not require reversal as (1) respondent failed to object to the

alleged errors and (2) the report attached to the petition

indicated that a diligent attempt was made to learn of respondent's

family and friends, and respondent had no contact with Reed and

desired no contact with her.  Thus, we do not believe the State's

failure to contact Reed resulted in prejudice to respondent and we

deem the issue waived for purposes of review.

          We also conclude that failure to strictly comply with the

formal proof of service and notice of hearing requirements do not

require reversal as the evidence shows that, as in Splett and Nau,

respondent failed to object and had received actual notice of the

hearing.  Respondent was present at the hearing and was represented

by appointed counsel who actively represented her interest on the

issue of involuntary commitment.  

          Furthermore, the record indicates that respondent was

given a copy of the petition for involuntary commitment. 

Introduced into evidence, without objection by respondent, was a

progress note from respondent's chart where a nurse named "CVH"

stated that on August 21, 1996, she gave respondent a copy of the

petition and read the petition to her.  Accordingly, although the

proof of service was not signed, the evidence clearly shows that

respondent had been given a copy of the petition and had actual

notice of the hearing.  Thus, we deem this issue waived for

purposes of appeal.

          Finally, we do not believe that error in marking the

first petition as seeking continued hospitalization, pursuant to

section 3-813 of the Code--when in fact the State was seeking an

original order of commitment--requires reversal under Splett and

Nau.  The record indicates that following the filing of the first

petition, a hearing was set within five days on August 26, 1996. 

On that date, another petition was filed attempting to correct the

error by indicating the petition was initiated by court order (405

ILCS 5/3-700 (West 1994)) and attaching the first petition and

other reports.  Apparently, respondent contends that the filing of

the second petition would require new medical certificates and the

setting of a new hearing date with proof of service and notice of

hearing.

          The statement provided by the Danville police officer who

executed the first petition clearly states that respondent was

brought from the police station to the hospital because she was

unable to care for herself and believed to pose a danger to

herself.  Respondent was examined by two psychiatrists within 24

hours of her admission.  These certificates indicated respondent

was wandering the streets and unable to provide for her needs. 

These certificates were available to respondent's attorney.  405

ILCS 5/3-611 (West 1994).  Clearly, even with the error in labeling

the first petition as requesting continued hospitalization, the

first petition established that an original order of commitment was

being requested as respondent was unable to care for herself and

posed a danger to herself.

          Most likely, the officer who executed the first petition

was proceeding under article VI of the Code governing emergency

admissions by certification.  405 ILCS 5/3-600 through 3-611 (West

1994).  Section 3-606 of the Code allows a peace officer to

transport a person to a mental health facility if he has reason to

believe hospitalization is necessary to protect that person from

harm.  405 ILCS 5/3-606 (West 1994).

          At the August 26, 1996, hearing, respondent never

objected to the grounds for involuntary commitment cited in either

petition.  As the first petition, in all other ways, clearly set

forth the reasons for seeking involuntary commitment, we do not

believe respondent was prejudiced by the error in labeling.  There

is no dispute that the proper medical certificates were filed with

the first petition as an emergency admission petition (405 ILCS

5/3-602 (West 1994)) or an admission by court order (405 ILCS 5/3-

702 (West 1994)).  Accordingly, we deem this issue waived for

purposes of review.

          We further do not believe that respondent was denied

effective assistance of counsel by failing to raise the alleged

errors in the form of the involuntary commitment petitions.  As we

have concluded that respondent was not prejudiced by these errors,

there can be no finding of ineffective assistance of counsel under

Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S.

Ct. 2052 (1984), for failing to object.  Respondent contends that

counsel was ineffective for failing to object to the admission of

the progress note indicating "CVH" provided respondent with a copy

of the petition.  However, respondent does not indicate on what

grounds counsel could have successfully objected to the admission

of the document.

          Finally, we conclude that there was sufficient evidence

to support the court's finding that respondent was a person subject

to involuntary admission, and because of her illness, she was

reasonably expected to inflict serious harm upon herself or another

in the near future or was unable to care for her basic needs so as

to guard herself from serious harm.  405 ILCS 5/1-119 (West 1994). 

The trial court's decision in involuntary commitment proceedings

will not be reversed on appeal unless its decision is determined to

be against the manifest weight of the evidence.  In re Bennett, 251

Ill. App. 3d 887, 888, 623 N.E.2d 942, 944 (1993).

          At the hearing, Linda Erp, assistant director at

Crosspoint Human Services, testified (1) she spoke with respondent

on August 23, 1996, (2) she has worked with respondent

intermittently since 1974, (3) she contacted respondent to evaluate

alternative placements and talked to her about the court process of

commitment, (4) respondent was unable to have a meaningful

conversation as her responses were not in touch with reality, (5)

respondent had refused to take her medications or see a doctor over

the past year, (6) respondent was "undomiciled," and (7) when

respondent was taking her medications, her condition improved.

          Dr. Inagat M. Alikan, a psychiatrist that had been

treating respondent since August 21, 1996, testified (1) respondent

was suffering from an undifferentiated type of schizophrenia  where

she becomes very "suspicious, delusional, loses touch with reality,

and [is] unable to take care of her daily needs"; (2) if respondent

was not presently given medical care, she would be a danger to

herself because she deludes herself into believing she is not ill

and does not take her medication; (3) respondent in her present

condition is unable to find a place to live and, consequently, has

been assaulted several times; (4) respondent has no understanding

about how to find a permanent home, food, or clothing; (5)

respondent needs long-term hospitalization; (6) only if respondent

takes her medication would outpatient treatment be feasible; and

(7) respondent suffers from auditory hallucinations and talks to

voices she hears.

          Respondent testified (1) she was living at Oaklawn Inn

but right now she was "kidnapped" at the police station and taken

to the hospital; (2) she pays for food and rent from a monthly

social security check; (3) she is a Navaho Indian and cannot take

certain medications; (4) she has her own doctor, and she is not

supposed to take the medicine prescribed by Dr. Alikan; (5) she has

been "fed with a needle through [her] side," but she has not found

a doctor yet to do it; (6) she eats every day, and when she had her

own apartment, she used to prepare some of her food herself; (7)

when she was at the Oaklawn Inn, she bought food at the grocery

store and sometimes she bought food already prepared; (8) she

denied that God told her not to take her medicine; and (9) she

talked to herself only to the extent everyone normally does.

          On cross-examination, respondent explained she was the

boss of Scotland Yard and she is here in Danville to see her

husband, Donnie Gaines.  On the day she was hospitalized, she was

planning to stay all night at the Danville police station and then

go to the Salvation Army.

          Considering all the evidence, the trial court could

reasonably have found that based on her mental illness, respondent

was unable to care for herself.  The evidence established

respondent was wandering the streets, staying at temporary

shelters, and as a result, she had been assaulted and robbed

several times.  Respondent had difficulty explaining why she was

staying at the police station for the night, what she was going to

do at the Salvation Army, and where she obtained her meals. 

Clearly, respondent was delusional, and Dr. Alikan testified he

believed respondent was suffering from auditory hallucinations.  

          In summary, we (1) reverse the court's order approving

the administration of psychotropic medication, and (2) affirm the

court's order directing that respondent be involuntarily committed

at Zeller.

          For the reasons stated, we affirm in part and reverse in

part.

          Affirmed in part and reversed in part.

          KNECHT and COOK, JJ., concur.