*In re* KEITH ADAMS, a Person Found Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Keith Adams, Respondent-Appellant).

Fourth District   No. 4—92—0567

Opinion filed January 28, 1993.

John B. Lower, Jeff M. Plesko, and Steven E. Craig, all of Guardianship and Advocacy Commission, of Champaign, for appellant.

Donald M. Cadagin, State's Attorney, of Springfield (Norbert J. Goetten, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:
Respondent Keith Adams appeals from a judgment entered by the Sangamon County circuit court finding he was subject to involuntary commitment pursuant to section 1—119 of the Mental Health and Developmental Disabilities Code (Code) (Ill. Rev. Stat. 1991, ch. 91½, par. 1—119). Respondent contends the trial court's order must be reversed because (1) the petition was defective as it did not indicate names and addresses of relatives or friends, or that a diligent effort had been made to determine his relatives and friends; (2) his involuntary admission was not supported by clear and convincing evidence; and (3) hospitalization was not the least restrictive means of treatment for his problem. We reverse because the petition to commit respondent was defective.

## I. Involuntary Commitment Hearing
The petition for respondent's involuntary commitment was filed by Elizabeth Bennett, who had been respondent's friend for three years. At the June 19, 1992, hearing respondent's counsel initially requested the petition against respondent be dismissed because respond-

ent wished to voluntarily commit himself. The trial judge denied the request, reasoning the evidence indicated respondent was not an acceptable candidate for such admission.

Bennett testified she had received threatening phone calls from respondent throughout the three years she had been his friend. The calls became so frequent she was forced to have her home phone number changed. However, respondent persisted in phoning and harassing her at work. At times respondent phoned her 20 times a day. Respondent had also begun to come to Bennett's home after he had been consuming alcohol. He would threaten to kill her and himself.

Bennett testified about specific actions by respondent. In May 1992 she and a friend were sitting at a table at her home. Respondent suddenly appeared and motioned as if he was shooting a gun. Bennett phoned the police but they were unable to apprehend respondent.

About a week before the hearing Bennett was awakened at 3 a.m. by respondent's pounding on her front door. She phoned the police again, but respondent departed before they arrived. One officer remained in her home to await respondent's return, which occurred soon. He tried to break down Bennett's door, but the police apprehended him.

Carol Lee, registered nurse supervisor for Monroe and Jefferson Hall at the McFarland Mental Health Center (hereinafter the Center), where respondent was taken, testified next. When the police brought respondent to the Center the night of June 11, 1992, he was quite agitated and combative and threatened to kill members of the staff. He also threatened to kill Bennett. His breath smelled of alcohol, and under cross-examination, Lee opined respondent was under the influence of alcohol that night.

Doctor David Gilliland, licensed clinical psychologist at the Center, testified regarding his examination of respondent since respondent was brought to the Center. He opined respondent's delusions were caused by alcohol and a mental illness. Respondent was diagnosed as a schizophrenic. Respondent's substance-abuse problem was partially the cause of his schizophrenia. Gilliland also opined that respondent was likely to seriously harm another in the near future and respondent likely required approximately 90 days of hospitalization to develop a proper treatment plan for him.

On cross-examination, Gilliland stated he never personally observed respondent hurt anyone. Gilliland knew respondent kicked a door open on one occasion. Gilliland also stated they currently had no concrete treatment plan prepared for respondent. The staff was still observing and evaluating respondent.

Respondent testified on his own behalf. He had been under a psychiatrist's care and had been taking "Laxitane" for his anxiety and depression. He stated he would never again disturb Bennett. He also stated he has never hurt anyone and has never followed through on his threats to hurt someone. He wished to continue his treatment with his previous psychiatrist and wanted to return to work and lead a productive, normal life.

During cross-examination, respondent stated he missed taking his pills sometimes, "one or two maybe a day." He stated he drank almost a half of a fifth of Jack Daniels whiskey the night he was taken to the Center. He made several calls daily to Bennett, but denied making 20 daily. According to respondent, he kicked Bennett's door out of anger and did not intend to kick it down.

The trial judge concluded the evidence established by clear and convincing evidence that respondent had a mental illness and could, because of that illness, reasonably be expected to harm someone in the near future. The judge also concluded hospitalization was currently the least restrictive environment for respondent.

## II. ANALYSIS

Respondent argues the petition for his involuntary commitment was fatally defective because it did not indicate the names and addresses of his relatives and friends, or that a diligent effort had been made to locate them. We agree.

Section 3—601(b)(2) of the Code (Ill. Rev. Stat. 1991, ch. 91½, par. 3—601(b)(2)) states the petition for involuntary commitment shall include:

"[T]he name and address of the spouse, parent, guardian and close relative, or if none, the name and address of any known friend of the respondent. If the petitioner is unable to supply any such names and addresses, he shall state that diligent inquiry was made to learn this information and specify the steps taken."

The State argues initially that respondent has waived any alleged defect in the petition because respondent agreed to voluntarily commit himself and because he did not complain about the alleged defect at the trial level. Respondent's attempt to voluntarily commit himself did not effect a waiver of the issue.

Moreover, because the alleged error in the petition would be apparent from the face of the record, liberty interests are involved, and the error could have been prejudicial to respondent, this court will consider respondent's argument despite his failure to call it to the cir-

cuit court's attention. See *In re Whittenberg* (1986), 143 Ill. App. 3d 836, 839, 493 N.E.2d 662, 663.

The petition does not list any relatives or friends of respondent or indicate what effort, if any, was made to identify and locate these individuals. Respondent directs us to this court's reversal of an involuntary commitment petition in *In re Wiessing* (1992), 229 Ill. App. 3d 737, 738, 593 N.E.2d 1137, 1137, because the petition did not indicate a diligent attempt had been made to find respondent's spouse, parent, guardian, close relative or friend.

The State contends *Wiessing* is distinct. There, this court reversed because the petition was defective in additional ways, *i.e.*, it did not contain a detailed recitation of what occurred to lead to the filing of the petition for involuntary commitment, and did not contain the date the alleged incident occurred. However, the *Wiessing* ruling was based only on the same defect present in the petition to commit respondent. *Wiessing* states, "we address only part of the first issue—the failure to include in the petition the name and address of persons named in section 3—601(b)(2) of the Code or in lieu thereof to allege diligent inquiry has been made." *Wiessing*, 229 Ill. App. 3d at 738, 593 N.E.2d at 1137.

The State also argues reversal is improper because the defect in the petition was not prejudicial. Although the State does not rely on it, a recent Illinois Supreme Court ruling supports the argument that failure to strictly comply with the Code does not *always* necessitate reversal of a petition for involuntary commitment. This principle is not contrary to our conclusion.

In *In re Nau* (1992), 153 Ill. 2d 406, the court concluded respondent waived consideration of a complaint the Code was not fully complied with because he was served notice of the hearing on his involuntary commitment before the petition was filed, contrary to the mandate provided by section 3—611 of the Code. (Ill. Rev. Stat. 1989, ch. 91½, par. 3—611.) The court refused to consider the error as plain error because of the particular circumstances presented: respondent had received notice, participated in the hearing without objecting to the defective notice, and was represented by counsel. *Nau*, 153 Ill. 2d at 419.

The *Nau* court also found the untimeliness of the petition for respondent's continued hospitalization after his initial commitment was waived by respondent. The petition was filed on the 61st day rather than on the 60th day of respondent's initial admission. (See Ill. Rev. Stat. 1989, ch. 91½, par. 3—813(a).) The court reasoned respondent appeared at the jury trial on the continuation issue, was represented

by counsel, and neither objected to the defect. In addition, respondent experienced no prejudice by the one-day delay. The jury concluded respondent was eligible for an additional 60-day involuntary stay. *Nau*, 153 Ill. 2d at 421-22.

Where the outcome of the commitment hearing may have been prejudiced by the State's failure to strictly comply with the Code, reversal of the petition is proper. The error in this case may have been prejudicial to respondent.

Because we find the petition to commit respondent was fatally flawed, we need not address the added issues raised by respondent. Respondent's involuntary commitment must be reversed. A petition must include names and addresses of family members or friends. If this information is absent from the petition, the petition must indicate that a diligent effort had been made to locate respondent's relatives or friends.

Reversed.

COOK and LUND, JJ., concur.