*In re* ERIC HERBOLSHEIMER (The People of the State of Illinois, Petitioner-Appellee, v. Eric Herbolsheimer, Respondent-Appellant).

Third District    No. 3—94—0594

Opinion filed May 12, 1995.

Melissa McGrath, of Guardianship & Advocacy Commission, of Peoria, and Jeff M. Plesko, of Guardianship & Advocacy Commission, of Anna, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LYTTON delivered the opinion of the court:

The respondent, Eric Herbolsheimer, appeals from the trial court's order subjecting him to involuntary administration of psychotropic medication. We affirm.

On July 15, 1994, Herbolsheimer was admitted to a mental health facility for examination. A petition to involuntarily commit him to Zeller Mental Health Center was filed on July 18. On July 19, counsel was appointed for Herbolsheimer, and Herbolsheimer received notice that a hearing on the petition was scheduled for July 20.

At the start of the hearing, Herbolsheimer indicated that he and his appointed attorney, John Riddle, disagreed over trial strategy, and he requested a continuance to enable him to obtain private counsel. Riddle suggested a continuance of two or three weeks to allow the State "to get their petition for meds on file" because Herbolsheimer was "telling [him] he won't take meds."

On July 21, the trial court entered an order continuing the hearing until August 3, 1994, and appointed an assistant public defender as Herbolsheimer's counsel. Herbolsheimer was notified of the new hearing date on July 21. The day before the scheduled hearing, the State filed a petition to involuntarily administer psychotropic medications to Herbolsheimer; neither Herbolsheimer nor his appointed counsel received formal notice of this petition. Riddle met with Herbolsheimer to discuss the case on August 2.

At the outset of the August 3 hearing, the trial judge stated that the hearing would concern both the petition for involuntary admission to a mental health facility and the petition for involuntary administration of psychotropic medication. Because Herbolsheimer had not obtained private representation, the trial judge again ap-

pointed Riddle as his counsel. Riddle then stated that he had considered himself Herbolsheimer's attorney since the start of the case and indicated that he was adequately prepared "to deal with the issues." Neither Herbolsheimer nor Riddle objected to the lack of notice or requested a continuance for the medication petition.

Dr. Jaya Attaluri, Herbolsheimer's treating psychiatrist, testified that Herbolsheimer had been diagnosed with chronic undifferentiated schizophrenia since 1990 and had been repeatedly hospitalized. At the hospital, he exhibited paranoia and accused various parties of conspiring to keep him away from his wife, who had obtained an order of protection against him. His behavior had been "very agitated and aggressive" and had included throwing chairs on two occasions and using inappropriate language. Dr. Attaluri added that Herbolsheimer's last three or four hospital admissions had been for aggressive behavior.

Dr. Attaluri testified that Herbolsheimer was unable to work and that his ability to care for himself was deteriorating. He had been repeatedly calling and threatening his wife, his mother, Department of Child and Family Services personnel, and La Salle County police officers. Dr. Attaluri believed that if Herbolsheimer were released, he would harass other people to find his wife and child and could become violent toward his wife if he found her.

Herbolsheimer's mother testified that after he had been admitted to the hospital he had put his hands around her neck and told her that she would be sorry if she did not get him out. She also stated that he had knives and that he had previously told her that "he had been good long enough and it [was] time people saw the real Eric." He then explained that he hoped "he would finally become crazy enough" to kill everyone without remembering it and then kill himself. His mother testified that she was concerned that he might attack someone if he were released. Herbolsheimer testified that in the hospital he had put his hands around another patient's neck and had "pushed him around" after the man allegedly hit him in the eye.

Dr. Attaluri stated that Herbolsheimer did not believe that he needed treatment and had a history of failing to take his medication after being released from the hospital. She wanted to prescribe Haldol or Risperdal to reduce his aggressive behavior and paranoid thoughts and testified that the benefits outweighed the potential harm. She also stated that a less restrictive treatment setting was impossible because Herbolsheimer exhibited poor judgment and lacked insight into his condition.

Herbolsheimer testified that his problems were related solely to his family situation and that he needs medication only to help him

sleep. He explained that he objected to taking Haldol because it produced serious side effects, and he lacked control when he was medicated. He stated that after his last release from the hospital he had sought counseling but had not taken his medication.

At the conclusion of the parties' closing arguments, the trial court granted the State's petitions for involuntary commitment and involuntary administration of psychotropic medications. Herbolsheimer appeals from the medication order.

On appeal Herbolsheimer presents four issues: (1) whether he was denied due process when both petitions were considered in a single hearing, (2) whether the absence of formal notice of the hearing on the petition for involuntary medication was reversible error, (3) whether the trial court's failure to appoint separate counsel on the medication petition prior to the hearing was reversible error, and (4) whether Herbolsheimer received ineffective assistance of counsel.

## COMBINED HEARING ON PETITIONS

Herbolsheimer contends that he is entitled to separate hearings on the petitions for involuntary commitment and administration of psychotropic medication under the Mental Health and Developmental Disabilities Code (the Code) (405 ILCS 5/1—100 et seq. (West 1992)). He argues that section 2—101 of the Code requires separate hearings to declare a respondent legally disabled and to subject that person to involuntary commitment. (405 ILCS 5/2—101 (West 1992).) He also claims that because he must be involuntarily committed before he is eligible for involuntary medication as "a recipient of services" (see 405 ILCS 5/2—107.1(a) (West 1992)), separate hearings must be held. We disagree.

Neither section 2—101 nor section 2—107.1 precludes both petitions from being considered in the same hearing. (405 ILCS 5/2—101, 2—107.1 (West 1992).) Indeed, section 2—101 is inapplicable here. Herbolsheimer was not the subject of a competency hearing, nor was he determined to be legally disabled within the meaning of section 2—101. He became eligible for involuntary medication under section 2—107.1 as "a recipient of services" when he was initially examined by a mental health professional on July 18; a prior hearing on the State's commitment petition was unnecessary. 405 ILCS 5/1—123 (West 1992); *In re C.E.* (1994), 161 Ill. 2d 200, 231, 641 N.E.2d 345, 359.

Herbolsheimer also argues that because the issues and liberty interests involved in the two petitions are different, separate hearings must be held to determine the appropriate procedural protections. (See *Morrisey v. Brewer* (1972), 408 U.S. 471, 481, 33 L. Ed. 2d 484, 494, 92 S. Ct. 2593, 2600.) He asserts that since a medical special-

ist must make the ultimate treatment decision (see *Parham v. J.R.* (1979), 442 U.S. 584, 609, 61 L. Ed. 2d 101, 123, 99 S. Ct. 2493, 2508), Dr. Attaluri's testimony alone was relevant to the medication petition. Thus, other testimony relating to the involuntary commitment petition exposed the trial court to irrelevant and prejudicial testimony.

Herbolsheimer has not specifically alleged how the trial court was prejudiced by considering both petitions in a single hearing; we do not believe that such prejudice can be shown. Because Dr. Attaluri's testimony sufficiently established Herbolsheimer's need for medication, any additional testimony could not have improperly influenced the court's consideration of the medication petition.

Trial judges are frequently required to consider evidence on several issues and to make multiple determinations within a single proceeding. Here, the trial court made separate findings on the two petitions and relied on different evidence in its orders. Herbolsheimer's due process rights were not infringed simply because the petitions were heard in a single proceeding.

(The discussion of the remaining issues is not to be published pursuant to Supreme Court Rule 23 (Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23, eff. July 1, 1994).)

CONCLUSION

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

STOUDER, P.J., and McCUSKEY, J., concur.