*In re* ARLETTA F. ROBINSON, a Person Found Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Arletta F. Robinson, a/k/a Londa Strickland, Respondent-Appellant).

Fourth District   No. 4—96—0728

Argued April 16, 1997.—Opinion filed May 2, 1997.

Cynthia Z. Tracy (argued), of Guardianship & Advocacy Commission, of Peoria, and Jeff M. Plesko, of Guardianship & Advocacy Commission, of Anna, for appellant.

Michael D. Clary, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Charles F. Mansfield (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On August 26, 1996, following a hearing in the circuit court of Vermilion County, the court entered two separate orders (1) finding that respondent, Arletta F. Robinson, was in need of involuntary admission to the Department of Mental Health and Developmental Disabilities at the George A. Zeller Mental Health Center (Zeller)

(405 ILCS 5/3—700 (West 1994)), and (2) directing the staff at Zeller to administer psychotropic medication to her (405 ILCS 5/2—107.1 (West Supp. 1995)). Respondent appeals, contending (1) certain defects in the State's petitions for involuntary commitment and administration of psychotropic medication, and the single proceeding held thereon, violated her procedural due process rights; (2) she was denied effective assistance of counsel; and (3) the evidence was insufficient to support the court's order directing involuntary commitment and administration of psychotropic medication.

We affirm in part and reverse in part.

Respondent's procedural due process claims concern violations of the statutes that govern (1) proceedings on a petition for administration of psychotropic medication (405 ILCS 5/2—107.1(a)(1), (a)(2) (West Supp. 1995)) and (2) proceedings on a petition for involuntary commitment (405 ILCS 5/3—601, 3—609 (West 1994)). The State concedes that all statutory violations as alleged by respondent have occurred but claims those errors should be deemed waived as respondent failed to object at the hearing, no prejudice had resulted, and there had been substantial compliance with the appropriate provisions of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/1—100 et seq. (West 1994)). As we will discuss, we decline to apply the waiver doctrine to issues concerning the petition for administration of psychotropic medication and the hearing held on that petition. As to issues concerning the petition for involuntary commitment, we apply the waiver doctrine.

■ The statutory provisions governing petitions for administration of psychotropic medication at issue here state as follows:

"(1) Any person 18 years of age or older, including any guardian, may petition the circuit court for an order authorizing the administration of psychotropic medication to a recipient of services. *The petitioner shall deliver a copy of the petition, and notice of the time and place of the hearing, to the respondent, his or her attorney, and the guardian, if any, no later than 10 days prior to the date of the hearing.* The petition may include a request that the court authorize such testing and procedures as may be essential for the safe and effective administration of the psychotropic medication sought to be administered, but only where the petition sets forth the specific testing and procedures sought to be administered.

(2) The court shall hold a hearing within 14 days of the filing of the petition. Continuances totaling not more than 14 days may be granted to the recipient upon a showing that the continuances are needed in order to prepare adequately for a hearing under this Section. The court may, in its discretion, grant additional continu-

ances if agreed to by all parties. *The hearing shall be separate from a judicial proceeding held to determine whether a person is subject to involuntary admission.*" (Emphasis added.) 405 ILCS 5/2—107.1(a)(1), (a)(2) (West Supp. 1995).

Here, there is no dispute that respondent did not receive a copy of the petition for administration of psychotropic medication or notice of hearing 10 days prior to the date of the hearing as the petition was filed on August 26, 1996, the day of the hearing originally set for the petition for involuntary commitment. The August 26, 1996, hearing proceeded on both the petitions for involuntary commitment and administration of psychotropic medication. Thus, respondent did not receive a "separate" hearing on the issue of administration of psychotropic medication.

The transcript of that hearing indicated respondent's appointed counsel announced he was ready for trial. Respondent never objected to the State's failure to serve her with a copy of the petition for administration of psychotropic medication or the notice of hearing and never objected to a single hearing held on the petitions for involuntary commitment and administration of psychotropic medication.

The State maintains that trial counsel's failure to object requires the application of the waiver doctrine when the record establishes no prejudice occurred by any of the procedural errors and there was substantial compliance with the Code. The State relies on a line of cases where the Supreme Court of Illinois has held that the trial court's failure to strictly comply with notice requirements in involuntary commitment proceedings did not require reversal where the respondent failed to object and the respondent had actual notice of the proceedings. *In re Splett*, 143 Ill. 2d 225, 231-32, 572 N.E.2d 883, 886 (1991); *In re Nau*, 153 Ill. 2d 406, 419-20, 607 N.E.2d 134, 140-41 (1992). In *Splett*, the respondent did not receive formal notice of hearing but was present at the hearing and was represented by counsel who actively presented a defense.

Subsequently, the supreme court similarly held that strict compliance with the requirement of a written predispositional report (Ill. Rev. Stat. 1989, ch. 91 1/2, par. 3—810) in involuntary commitment proceedings was unnecessary where the respondent failed to object to the lack thereof and the purpose of the requirement was substantially fulfilled by oral testimony. *In re Robinson*, 151 Ill. 2d 126, 134, 601 N.E.2d 712, 717 (1992). Most recently, the supreme court in *In re C.E.*, 161 Ill. 2d 200, 225-27, 641 N.E.2d 345, 356-57 (1994), applied *Splett* in holding that the trial court's failure to strictly comply with notice requirements in proceedings to administer psychotropic medication did not amount to a due process violation where the re-

spondent had actual notice of the proceedings and ample opportunity to prepare a defense.

■ Here, unlike *Splett* and its progeny, we do not believe the procedural defects can be deemed harmless or that respondent had actual notice of the petition for psychotropic medication with ample opportunity to prepare for a defense. The evidence indicates respondent was present with her attorney at the August 26, 1996, hearing to proceed on the involuntary commitment petition. Thus, respondent had no notice of the petition for administration of psychotropic medication until the day of the hearing and had no opportunity to prepare a defense.

The State maintains that no prejudice occurred by the total lack of notice of the petition for administration of psychotropic medication as respondent and counsel actively participated in the proceedings. However, we cannot determine from the record that counsel's performance indicates he had an opportunity to prepare for a hearing on the petition for administration of psychotropic medication.

Moreover, in enacting the requirement of "separate" hearings for petitions for involuntary commitment and administration of psychotropic medication under section 2—107.1(a)(2) of the Code (405 ILCS 5/2—107.1(a)(2) (West Supp. 1995)), the legislature apparently intended to ensure that psychotropic medication petitions are not just simply appended to involuntary commitment petitions. Based on the notice requirements, if followed, an involuntary commitment proceeding would have to be held within five days of filing the petition (405 ILCS 5/3—611 (West 1994)), where administration of psychotropic medication proceedings could not be held any earlier than 10 days after filing the petition (405 ILCS 5/2—107.1(a)(1) (West Supp. 1995)). Thus, separate hearings would have to be held. Here, where respondent had no notice of the administration of psychotropic medication proceedings, we do not believe the "separate" hearing requirement has been substantially complied with by the court entering separate findings on each petition. The decision in *In re Herbolsheimer*, 272 Ill. App. 3d 140, 650 N.E.2d 287 (1995), is not controlling here. There, the third district held that a combined hearing on petitions for involuntary commitment and administration of psychotropic medication was not error. However, the *Herbolsheimer* case was decided prior to the enactment of section 2—107.1(a)(2) of the Code expressly requiring separate hearings.

Given our decision that respondent's failure to object to defects in the administration of psychotropic drug proceedings does not amount to a waiver on review, we further conclude that these errors require us to reverse and vacate the court's medication order. This

court in *In re Carmody*, 274 Ill. App. 3d 46, 653 N.E.2d 977 (1995), held that the trial court erred in ordering the administration of psychotropic medication following a finding that the respondent was in need of hospitalization when no formal petition for the administration of medication had been filed, thereby depriving the respondent of proper notice. This court explained that in order to proceed on a petition for administration of psychotropic medication, it was implicit under the former section 2—107.1 of the Code (see 405 ILCS 5/2—107.1 (West 1992)) that (1) a petition be filed prior to the date of the hearing and (2) the trial court provide notice to respondent of the hearing. Absent these requirements, the trial court is without authority under section 2—107.1 of the Code to order the administration of psychotropic medication. *Carmody*, 274 Ill. App. 3d at 54, 653 N.E.2d at 983. The *Carmody* holding applies here, as the requirements stated in *Carmody* have expressly been made part of the notice requirement of the amended section 2—107.1(a)(1) of the Code (405 ILCS 5/2—107.1(a)(1) (West Supp. 1995)) applicable here.

As we are vacating the court's medication order, we need not decide whether respondent received ineffective assistance of counsel based on counsel's failure to object to the defects as discussed in the administration of psychotropic medication proceeding, nor do we need to address the sufficiency of the evidence to support such an order.

■ Respondent also challenges the form of the petition for involuntary commitment and whether she received formal service of the petition with notice of hearing. The record indicates that two petitions for involuntary commitment were filed. The first petition was filed on August 22, 1996, by a Danville police officer and erroneously provided that the petition was being filed on grounds that respondent was a patient who continues to be subject to involuntary commitment pursuant to section 3—813 of the Code (405 ILCS 5/3—813 (West 1994)). However, the statement in support of the petition indicated that respondent came to the Danville police station on the evening of August 20, 1996, apparently because she was homeless and in need of shelter. Respondent was transported to United Samaritans Medical Center by the reporting officer, as he believed respondent was unable to care for herself and was a danger to herself.

The petition provided no answer in the space for listing the "names and addresses of the spouse, parent, guardian, and close relative or, if none, known friend." The petition also left blank the space provided for proof of service of the petition upon respondent. Attached to the petition were two medical certificates establishing that respondent was examined by two psychiatrists, once on August 21,

1996, and again on August 22, 1996. Those examinations established that respondent suffered from schizophrenia.

On August 26, 1996, the day of the hearing, a second petition for involuntary admission was filed, that one indicating that admission was requested by court order pursuant to section 3—700 of the Code (405 ILCS 5/3—700 (West 1994)). As in the first petition, the second petition left blank the names and addresses of family and friends to be contacted and proof of service of the petition.

Attached to the petition was a copy of the first petition and a handwritten notation near the proof of service portion that stated, "[Patient] refuse[s] to sign upon [admission] to unit. 8-21-96 per V. Hutchinson [R.N.] 8-23-96 Smith [R.N.]" Also attached to the petition was a copy of an extensive history and assessment of respondent prepared by a social worker on August 22, 1996.

The State acknowledges that the petitions were defective in that (1) neither included the names and addresses of any relative or close friend or explained why none were listed as required by section 3—601(b)(2) of the Code (405 ILCS 5/3—601(b)(2) (West 1994)), (2) neither contained a signed proof of service indicating petitioner received a copy of the petition within 12 hours after admission as required by section 3—609 of the Code (405 ILCS 5/3—609 (West 1994)), and (3) both contained conflicting statutory authority under which the State was proceeding for involuntary admission. Furthermore, the record does not prove that respondent received formal notices of hearing as required by section 3—611 of the Code (405 ILCS 5/3—611 (West 1994)). The State contends that these issues are waived, as respondent failed to raise them to the trial court and no prejudice had resulted. We agree with the State.

In *In re Adams*, 239 Ill. App. 3d 880, 607 N.E.2d 681 (1993), this court declined to apply the waiver doctrine to bar consideration of an alleged error in a petition for involuntary commitment in failing to provide names and addresses of the respondent's family or friends or explain why none were listed as required by section 3—601(b)(2) of the Code (Ill. Rev. Stat. 1991, ch. 91½, par. 3—601(b)(2)). This court found waiver was inappropriate there, as the error was apparent from the face of the record, liberty interests were involved, and the error could be considered prejudicial. Based on the supreme court's decision in *Nau*, this court expressly held that failure to strictly comply with the requirement of the petition to list names of relatives or friends or indicate a diligent attempt to do so does not always require reversal if it could be shown that no prejudice to the respondent had occurred. Because the error there may have been prejudicial to the respondent, the court reversed the involuntary commitment order. *Adams*, 239 Ill. App. 3d at 885, 607 N.E.2d at 684.

Similarly, in *In re Ellis*, 284 Ill. App. 3d 691, 694, 672 N.E.2d 893, 894-95 (1996), the Third District Appellate Court held it was reversible error in involuntary commitment proceedings for the petition to fail to list names and addresses of the respondent's family or friends or a statement of diligent inquiry, particularly where the respondent's mother had maintained contact with the mental health facility.

We conclude the instant case is distinguishable from *Adams* and *Ellis* as here, even though no names of family or friends are listed on the petition nor is there an explanation of why none are listed, an extensive report of respondent's history was attached to the second petition for involuntary commitment. This report indicated that respondent refused to give a personal history and had no known family or friends, except a sister named Ethel Reed. Respondent was presently refusing to acknowledge Reed was her sister and had no "supportive family contact." Reed was last known to be living in Danville, Illinois. We believe that based on *Splett* and *Nau*, failure to strictly comply with section 3—601(b)(2) of the Code does not require reversal as (1) respondent failed to object to the alleged errors and (2) the report attached to the petition indicated that a diligent attempt was made to learn of respondent's family and friends, and respondent had no contact with Reed and desired no contact with her. Thus, we do not believe the State's failure to contact Reed resulted in prejudice to respondent and we deem the issue waived for purposes of review.

We also conclude that failure to strictly comply with the formal proof of service and notice of hearing requirements does not require reversal as the evidence shows that, as in *Splett* and *Nau*, respondent failed to object and had received actual notice of the hearing. Respondent was present at the hearing and was represented by appointed counsel who actively represented her interest on the issue of involuntary commitment.

Furthermore, the record indicates that respondent was given a copy of the petition for involuntary commitment. Introduced into evidence, without objection by respondent, was a progress note from respondent's chart where a nurse named "CVH" stated that on August 21, 1996, she gave respondent a copy of the petition and read the petition to her. Accordingly, although the proof of service was not signed, the evidence clearly shows that respondent had been given a copy of the petition and had actual notice of the hearing. Thus, we deem this issue waived for purposes of appeal.

Finally, we do not believe that error in marking the first petition as seeking continued hospitalization, pursuant to section 3—813 of the Code—when in fact the State was seeking an original order of commitment—requires reversal under *Splett* and *Nau*. The record

indicates that following the filing of the first petition, a hearing was set within five days on August 26, 1996. On that date, another petition was filed attempting to correct the error by indicating the petition was initiated by court order (405 ILCS 5/3—700 (West 1994)) and attaching the first petition and other reports. Apparently, respondent contends that the filing of the second petition would require new medical certificates and the setting of a new hearing date with proof of service and notice of hearing.

The statement provided by the Danville police officer who executed the first petition clearly states that respondent was brought from the police station to the hospital because she was unable to care for herself and was believed to pose a danger to herself. Respondent was examined by two psychiatrists within 24 hours of her admission. These certificates indicated respondent was wandering the streets and unable to provide for her needs. These certificates were available to respondent's attorney. 405 ILCS 5/3—611 (West 1994). Clearly, even with the error in labeling the first petition as requesting continued hospitalization, the first petition established that an original order of commitment was being requested as respondent was unable to care for herself and posed a danger to herself.

Most likely, the officer who executed the first petition was proceeding under article VI of the Code, governing emergency admissions by certification. 405 ILCS 5/3—600 through 3—611 (West 1994). Section 3—606 of the Code allows a peace officer to transport a person to a mental health facility if he has reason to believe hospitalization is necessary to protect that person from harm. 405 ILCS 5/3—606 (West 1994).

At the August 26, 1996, hearing, respondent never objected to the grounds for involuntary commitment cited in either petition. As the first petition, in all other ways, clearly set forth the reasons for seeking involuntary commitment, we do not believe respondent was prejudiced by the error in labeling. There is no dispute that the proper medical certificates were filed with the first petition as an emergency admission petition (405 ILCS 5/3—602 (West 1994)) or an admission by court order (405 ILCS 5/3—702 (West 1994)). Accordingly, we deem this issue waived for purposes of review.

■ We further do not believe that respondent was denied effective assistance of counsel by failing to raise the alleged errors in the form of the involuntary commitment petitions. As we have concluded that respondent was not prejudiced by these errors, there can be no finding of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), for failing to object. Respondent contends that counsel was ineffective for failing

to object to the admission of the progress note indicating "CVH" provided respondent with a copy of the petition. However, respondent does not indicate on what grounds counsel could have successfully objected to the admission of the document.

■ Finally, we conclude that there was sufficient evidence to support the court's finding that respondent was a person subject to involuntary admission, and because of her illness, she was reasonably expected to inflict serious harm upon herself or another in the near future or was unable to care for her basic needs so as to guard herself from serious harm. 405 ILCS 5/1—119 (West 1994). The trial court's decision in involuntary commitment proceedings will not be reversed on appeal unless its decision is determined to be against the manifest weight of the evidence. *In re Bennett*, 251 Ill. App. 3d 887, 888, 623 N.E.2d 942, 944 (1993).

At the hearing, Linda Erp, assistant director at Crosspoint Human Services, testified (1) she spoke with respondent on August 23, 1996, (2) she has worked with respondent intermittently since 1974, (3) she contacted respondent to evaluate alternative placements and talked to her about the court process of commitment, (4) respondent was unable to have a meaningful conversation as her responses were not in touch with reality, (5) respondent had refused to take her medications or see a doctor over the past year, (6) respondent was "undomiciled," and (7) when respondent was taking her medications, her condition improved.

Dr. Inagat M. Alikan, a psychiatrist that had been treating respondent since August 21, 1996, testified (1) respondent was suffering from an undifferentiated type of schizophrenia where she becomes very "suspicious, delusional, loses touch with reality, and [is] unable to take care of her daily needs"; (2) if respondent was not presently given medical care, she would be a danger to herself because she deludes herself into believing she is not ill and does not take her medication; (3) respondent in her present condition is unable to find a place to live and, consequently, has been assaulted several times; (4) respondent has no understanding about how to find a permanent home, food, or clothing; (5) respondent needs long-term hospitalization; (6) only if respondent takes her medication would outpatient treatment be feasible; and (7) respondent suffers from auditory hallucinations and talks to voices she hears.

Respondent testified (1) she was living at Oaklawn Inn but right now she was "kidnapped" at the police station and taken to the hospital; (2) she pays for food and rent from a monthly social security check; (3) she is a Navaho Indian and cannot take certain medications; (4) she has her own doctor, and she is not supposed to take the

medicine prescribed by Dr. Alikan; (5) she has been "fed with a needle through [her] side," but she has not found a doctor yet to do it; (6) she eats every day, and when she had her own apartment, she used to prepare some of her food herself; (7) when she was at the Oaklawn Inn, she bought food at the grocery store and sometimes she bought food already prepared; (8) she denied that God told her not to take her medicine; and (9) she talked to herself only to the extent everyone normally does.

On cross-examination, respondent explained she was the boss of Scotland Yard and she is here in Danville to see her husband, Donnie Gaines. On the day she was hospitalized, she was planning to stay all night at the Danville police station and then go to the Salvation Army.

Considering all the evidence, the trial court could reasonably have found that, based on her mental illness, respondent was unable to care for herself. The evidence established respondent was wandering the streets, staying at temporary shelters, and as a result, she had been assaulted and robbed several times. Respondent had difficulty explaining why she was staying at the police station for the night, what she was going to do at the Salvation Army, and where she obtained her meals. Clearly, respondent was delusional, and Dr. Alikan testified he believed respondent was suffering from auditory hallucinations.

In summary, we (1) reverse the court's order approving the administration of psychotropic medication, and (2) affirm the court's order directing that respondent be involuntarily committed at Zeller.

For the reasons stated, we affirm in part and reverse in part.

Affirmed in part and reversed in part.

KNECHT and COOK, JJ., concur.