NO. 4-98-0185

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

December 31, 1998.

In the Matter of Darrell W. Miller, a   ) Appeal from

Person Found Subject to Involuntary ) Circuit Court of

Admission, ) Vermilion County

THE PEOPLE OF THE STATE OF ILLINOIS, ) No. 98MH2

Petitioner-Appellee, )

v. ) Honorable

DARRELL W. MILLER, ) Claudia Smith Ander­son,

Respondent-Appellant. ) Judge Presid­ing. 

_________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

On January 27, 1998, following a bifurcated hearing, the trial court entered two separate orders (1) finding that respon­dent, Darrell W. Miller, was in need of involuntary admis­

sion to the Department of Mental Health and Developmental Dis­

abilities (Department) at the George A. Zeller Mental Health Center (Zeller) (405 ILCS 5/3-700 
et
 
seq
. (West 1996)); and (2) direct­ing the staff at Zeller or Provena United Samaritans Medical Center (Provena) to adminis­ter psycho­tropic medication to respon­dent (405 ILCS 5/2-107.1 (West Supp. 1997) (eff. December 1, 1997)).  

Respondent appeals, arguing as follows:  (1) certain proce­dur­al de­fects re­quire rever­sal of the trial court's order, including (a) the State's failure to provide formal notice of the peti­tion for administra­tion of psychotropic medica­tion and the hearing to be held there­on, and (b) the trial court's conducting a single, combined pro­ceeding on that petition and the peti­tion for invol­un­tary hospi­tal­iza­tion; (2) certain omissions in the petition for administra­tion of psycho­tropic medica­tion require reversal; (3) certain omis­sions in the court's order directing the adminis­tra­tion of psychotropic medication require reversal of the order; and (4) the evi­dence pre­sent­ed was insuf­ficient to support the court's orders direct­ing involun­tary hospitaliza­tion and adminis­tra­tion of psycho­tropic medica­tion.  We affirm.  

I.  BACKGROUND

On January 19, 1998, respondent's community caseworker filed a petition under section 3-700 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3-700 
et
 
seq
. (West 1996)) to have respondent involuntarily admitted to a mental health facili­ty.  The petition alleged that respondent was mentally ill and, because of that illness, he could reasonably be expected to inflict serious physical harm to himself or another in the near future.  The petition also alleged that when the caseworker brought respon­dent a "spending check" on January 19, respondent became angry and cursed at the caseworker for being late.  Respondent also allegedly lunged at the caseworker and said, "I'll kill you next time."  

On January 20, 1998, the trial court ordered that respondent be detained for examination.  That same day, respon­

dent's attending physi­cian at Provena, Dr. Brumyong Lee, peti­

tioned the court under section 2-107.1 of the Code for an order autho­rizing his facility's clini­cal staff to admin­is­ter psycho­

tropic medica­tion to respon­dent against respondent's will (405 ILCS 5/2-107.1 (West Supp. 1997)).

On January 22, 1998, respondent was given notice of a hearing to be held on January 27, 1998, but that notice did not indicate the nature or substance of the hearing, nor does the record indicate that respondent ever personally received a copy of either the peti­tion for involuntary hospitalization or the petition for psycho­tropic medication.

On January 27, 1998, the trial court conducted a hearing on the peti­tion for involuntary hospitalization.  At that hearing, Lee, a psychiatrist, testified that he was very familiar with respondent's case and had treated him numerous times, both as an inpa­tient and an outpatient.  When respondent "became decom­pen­sated," that is, when he did not follow his recommended treat­ment, he suffered from auditory hallucinations and became para­noid.  Based on Lee's person­al knowl­edge of respondent's case, his discus­sions with other members of respondent's treat­

ment team, and his review of respondent's mental health re­cords, Lee opined that respondent was suffering from a chronic psychotic condition--that is, some form of schizophre­nia.       

When Lee examined respondent on January 19, 1998, pursuant to the trial court's order, respondent had a "dirty" appearance and did not seem able to take care of his basic needs, such as bathing.  Respon­dent also refused any type of treat­ment or medication and told Provena staff members that they were trying to poison him.  In addition, staff members observed respon­dent carry­ing on conver­sa­tions with imaginary persons, although respondent denied that he was hearing voices.  

Lee opined that respondent reasonably could be expected to inflict serious harm to himself or another in the future.  Lee based his opinion on respondent's history of violent behavior when he does not take his prescribed medication, includ­ing (1) a prior arrest for crimi­nal damage to proper­ty; and (2) respon­

dent's threat of physical harm to and near attack of his case­

worker on January 19, 1998.  Lee also opined that, because of respondent's mental illness, he was unable to care for himself or provide for his basic needs.  When respondent takes his pre­

scribed medica­tion, he is able to take care of himself and act more reasonably; however, his compliance "has been extremely poor."  Because respondent has such poor compliance with his recommended treat­ment, Lee recom­mended that respondent be admit­

ted to Zeller and receive "long-term treat­ment to stabi­lize his condition." 

On cross-examination, Lee testified that he had never actually seen respondent damage property, nor had respondent exhib­it­ed violent behavior toward Lee.  Lee stated that respon­

dent was not malnourished.  He also stated that he had never visited respondent's apartment.  

On redirect examination, Lee testified that he relied upon information he had received regarding respondent's arrest for criminal damage to property in forming his opinions regarding respondent's mental illness.  It was Lee's understanding that respondent became upset because his stove did not work, and respondent tossed the stove outside his apartment and de­stroyed it.  Lee stated that this type of infor­ma­tion is the sort custom­

ari­ly relied upon by experts in his field in making diagno­ses.  Lee also opined that based upon Lee's experi­ence with respondent and respondent's diagnosis, any threats of physical harm by respon­dent should be taken more seriously than some other indi

vidual's "stray com­ment."  

Following the close of the State's case in chief, the trial court allowed the State to amend the peti­tion for involun­

tary hospitalization to allege that respon­dent was mental­ly ill and unable to provide for his basic needs and protect himself from harm.  

Respondent testified on his own behalf that he received $40 per week from his caseworker, but that amount of money was not enough for him to "buy shampoo, laundry soap, food and ciga­rettes, that and everything else."  When asked if he ever gets angry at others, respondent stated "Well--well, I--not all the time.  When they do things to me."  He also stated that he would not hurt anyone, he just told people that he would.  When asked why he was not taking his pre­scribed medication, respondent stated as follows:

"Because--because one time Dr. Lee told me he was going to overdose me before, and-- and I tell him I have side effects and they say that's just in your head or some­thing, that ain't this, and I tried to tell them that the medication ain't right and I don't-- and I don't like needles, and I try--and I tried other medicines and they--they--and-- and they say, um--they say, well, that's got side effects real bad--side effects and things and he say, well, it will be okay."

Respondent further stated that he sometimes experiences side effects from his medication, such as stomachaches and other unspecified pain.  Respon­dent also stated that when he was in jail, "they tried to poison food and everything else."  

Respondent also testified that he can take care of himself and he cooks his own meals.  Respondent stated that sometimes he was clean but his clothes were dirty, and he "took baths and everything else at home, and then them people tried to double charge me at the grocery store and everything else."  

On cross-examination, respondent testified that the jail staff tried to poison him by spraying something on his food and "they're all trying to do me in."  Respondent stated that he became upset when his landlord would not "fix things," so he picked up the stove and set it outside his apartment.  He also stated that he was not taking his prescribed medication because "they try to do [him] in."   

After considering the evidence and arguments of coun­

sel, the trial court found that respondent, by virtue of his mental illness, presented a threat of harm to himself and others and was unable to care for his own basic needs.  The court thus ordered that respondent be involuntarily admitted to the Depart­

ment at Zeller for a period not to exceed 180 days.

Immediately following the hearing on the petition for involuntary hospitalization, the parties proceeded with the hearing on the petition for administra­tion of psychotropic medica­tion.  At that hearing, Lee once again testified that respondent suffers from chronic mental illness, specifically schizophrenia.  Lee stated that respondent had a history of multiple hospitalizations and a pattern of not taking his pre­

scribed medication once he becomes stabilized.  He also stated that respon­dent was cur­rent­ly refus­ing to take his pre­scribed medica­tion (Haldol), and respondent's ability to function had noticeably deteriorated because of his noncompli­ance.  Lee also stated that when respon­dent takes his prescribed medica­tion, he is able to func­tion.  Lee further stated that respondent often complained about feeling sleepy when he was taking Haldol, but Lee had not ob­served any "harm­ful side ef­fects" over the years he had treated respondent.  He opined that the benefit of treat­ing respon­dent with psycho­tropic medica­tion outweighed the harm.  Lee had tried other "less restrictive alternatives" in treating respondent, but none had worked.  He also opined that Haldol (administered by injection) is "appropri­ate and neces­sary" for respondent's mental health.    

On cross-examination, Lee testified that a patient using Haldol may experience side effects, including irreversible involuntary movement, constipation, sedation, dizziness, dry mouth, and blurred vision.  Lee had tried other psychotropic medications, such as Navane, but none of those medications had been effective due to respondent's poor compliance in taking medication orally.  No cure exists for schizophrenia; the only treat­ment option consti­tutes psychotropic medication to stabilize patients with schizo­phrenia.   

After considering the evidence and the arguments of counsel, the trial court ordered the staff at Zeller or Provena to admin­is­ter psycho­tropic medica­tion to respon­dent for a period not to exceed 90 days.

This appeal followed.  

II.  ANALYSIS

A.  Exception to the Mootness Doctrine

[Nonpublishable material under Supreme Court Rule 23 omitted.]

B.  Procedural Defects

Respondent first argues that certain procedural de­fects require this court to reverse the trial court's order direct­ing the staff at Zeller or Provena to administer psychotropic medica­

tion to respondent.  Specifically, he contends that the follow­ing defects require reversal:  (1) the State's failure to provide him with formal notice of the peti­tion for administra­tion of psycho­

tropic medication and the hearing to be held there­on; and (2) the court's conducting a single, combined pro­ceeding on both that peti­tion and the peti­tion for invol­un­tary hospi­tal­iza­tion. 

In response, the State argues, in part, that respondent has forfeited any claimed procedural defects because (1) respon­

dent failed to object at the January 27, 1998, hearing; (2) both respondent and his attor­ney were present at that hearing and specifi­cally waived any error during that hearing; and (3) no prejudice resulted.  In light of the unique circumstances of this case, we agree with the State.

Section 2-107.1 of the Code provides, in perti­nent part, as follows:

"(1) Any person 18 years of age or old­

er, including any guardian, may petition the circuit court for an order authorizing the administration of authorized involuntary treatment to a recipient of services.  ***  
The
 
petitioner
 
shall
 
deliver
 
a
 
copy
 
of
 
the
 
petition
, 
and
 
notice
 
of
 
the
 
time
 
and
 
place
 
of
 
the
 
hearing
, 
to
 
the
 
respondent
, 
his
 
or
 
her
 
attorney
, 
any
 
known
 
agent
 
or
 
attorney
-
in
-

fact
, 
if
 
any
, and the guardian, if any, 
no
 
later
 
than
 
10
 
days
 
prior
 
to
 
the
 
date
 
of
 
the
 
hearing
.  ***

(2) The court shall hold a hearing with­

in 14 days of the filing of the petition.  Continuances totaling not more than 14 days may be granted to the recipient upon a show­

ing that the continuances are needed in order to prepare adequately for a hearing under this [s]ection.  The court may, in its dis­cretion, grant additional continuances if agreed to by all parties.  
The
 
hearing
 
shall
 
be
 
separate
 
from
 
a
 
judicial
 
proceeding
 
held
 
to
 
determine
 
whether
 
a
 
person
 
is
 
subject
 
to
 
involuntary
 
admission
."  (Emphasis added.)  405 ILCS 5/2-107.1(a)(1), (a)(2) (West Supp. 1997).  

"Authorized involuntary treatment" is defined in section 1-121.5 of the Code and includes psychotropic medication.  405 ILCS 5/1-

121.5 (West Supp. 1997).  

The Supreme Court of Illinois has held that a trial court's failure to strictly comply with notice requirements in an involuntary hospitalization proceeding did not require reversal when (1) the respondent failed to object; and (2) the respondent had actual notice of the proceed­ings.  See 
In re Splett
, 143 Ill. 2d 225, 231-32, 572 N.E.2d 883, 886 (1991); 
In re Nau
, 153 Ill. 2d 406, 419-20, 607 N.E.2d 134, 140-41 (1992).  

In 
Splett
, the respondent did not receive formal notice of the hearing on the involuntary hospitalization petition but was present at the hearing and was repre­sented by counsel, who active­ly presented a defense.  The supreme court held that the defect in notice did not require reversal of the order.  In so holding, the court focused on the fact that the respondent had clearly received actual notice of the hearing on the petition and the respondent was in no way prejudiced by the lack of formal notice.  
Splett
, 143 Ill. 2d at 232, 572 N.E.2d at 886.  

In 
Nau
, the respon­dent was served with a notice of hearing on a petition for emergency involuntary admis­sion, but he was served before the petition was filed.  Citing 
Splett
, the supreme court affirmed the commitment order because (1) the respon­dent had re­ceived actual notice of the hearing; (2) neither the respondent nor his counsel ever object­ed in the trial court to being served with notice of a hearing before the petition was filed; and (3) the "re­spon­dent does not assert, and the record does not indi­cate, that respon­dent was in any manner prejudiced by the fact that the notice was served before the trial court had a chance to direct it."  
Nau
, 153 Ill. 2d at 419, 607 N.E.2d at 140.

More recently, in 
In re C.E.
, 161 Ill. 2d 200, 225-27, 641 N.E.2d 345, 356-57 (1994), the supreme court applied 
Splett
 in holding that the trial court's failure to strictly comply with notice require­ments in proceedings to administer psychotropic medication did not amount to a due process violation where the respondent had (1) actual notice of the proceedings, and (2) ample opportunity to prepare a defense.

In 
In re Robinson
, 287 Ill. App. 3d 1088, 1091, 679 N.E.2d 818, 820 (1997), the petition for administration of psychotropic medication was filed on the day of the hearing for involuntary hospitalization.  Thus, the respondent did not receive a copy of the petition for the administration of psycho­

tropic medication or notice of hearing on that petition 10 days prior to the date of hearing, as required by section 2-107.1(a)(1) of the Code.  The tran­script of the single hearing conducted on both petitions showed that the respondent's counsel announced that he was ready for trial and neither the respon­dent nor her counsel object­ed to the State's failure to serve her with a copy of the peti­tion or the notice of hearing.  Nonethe­less, this court vacated the trial court's medication order and wrote the follow­ing:

"Here, unlike 
Splett
 and its progeny, we do not believe the procedural defects can be deemed harmless or that respondent had actual notice of the petition for psychotropic medi­

c­ation with ample opportunity to prepare for a defense.  ***  [Instead,] respondent had no notice of the petition for administration of psychotropic medication until the day of the hearing and had no opportunity to prepare a defense."  
Robinson
, 287 Ill. App. 3d at 1092, 679 N.E.2d at 821. 

In so concluding, this court noted that it could not determine from the record that counsel's performance demonstrated that he had an opportunity to prepare for a hearing on the petition for adminis­tration of psychotropic medication.  
Robin­son
, 287 Ill. App. 3d at 1092, 679 N.E.2d at 821.    

This court in 
Robinson
 also addressed the Code's separate hearing requirement as follows:

"[I]n enacting the requirement of `sepa­

rate' hearings for petitions for involuntary commitment and administration of psychotropic medication under section 2-107.1(a)(2) [ci­ta­

tion], the legislature apparently intended to ensure that psychotropic medication peti­tions are not just simply appended to invol­untary commitment petitions.  
Based
 
on
 
the
 
notice
 
requirements
, 
if
 
followed
, 
an
 
involun­tary
 
commitment
 
proceeding
 
would
 
have
 
to
 
be
 
held
 
within
 
five
 
days
 
of
 
filing
 
the
 
petition
 [ci­

tation], 
where
 
administration
 
of
 
psycho­trop­ic
 
medication
 
proceedings
 
could
 
not
 
be
 
held
 
any
 
earlier
 
than
 
10
 
days
 
after
 
filing
 
the
 
peti­

tion
 [citation].  
Thus
, 
separate
 
hear­ings
 
would
 
have
 
to
 
be
 
held
."  (Emphasis add­ed.)  
Robinson
, 287 Ill. App. 3d at 1092, 679 N.E.2d at 821.              

Although the record in the present case contains a peti­tion for admin­istration of psycho­tropic medication, it does not contain a proof of service of that petition.  See 
In re Ellis
, 284 Ill. App. 3d 691, 693, 672 N.E.2d 893, 894 (1996) ("The burden is upon the State to affirma­tively demon­strate that it has complied with the mandates of the Code").  In addition, although the record contains a notice of hearing to be con­duct­ed on January 27, 1998, that notice did not state the substance or nature of that hearing.  However, the transcript of the January 27, 1998, hearing clearly shows that that hearing originally was set only for the petition for involuntary hospi­taliza­tion.

Thus, similar to the situa­tion in 
Robin­son
, respondent here had no actual notice--until immediately following the hearing on the peti­tion for invol­un­tary hospitalization--that the trial court also was going to conduct a hearing on the petition for adminis­tration of psychotropic medication.  Like this court in 
Robin­son
, we cannot determine from the record that counsel's performance indicates that she had ample opportunity to prepare for a hearing on the petition for adminis­tration of psychotropic medication.  Howev­er, unlike 
Robin­son
, not only did respon­dent and his counsel fail to object to the State's failure to serve him with a copy of the petition for adminis­tration of psychotrop­

ic medica­tion or notice of hearing, respon­dent and his counsel unequivo­cally waived the 10-day notice of hearing re­quirement and specif­i­cally agreed to a hearing on that petition immediately following the involun­tary hospital­iza­tion hear­ing.             

Thus, this case presents the question of whether a respon­dent may make an informed waiver of his statutory right to receive notice of hearing on a petition for administra­tion of psychotrop­ic medication at least 10 days prior to the date of the hearing, pursuant to section 2-107.1(a)(1) of the Code (405 ILCS 5/2-107.1 (West Supp. 1997).  The legislature, as the policy-

making body of the State of Illi­nois, has determined, and appro­

priately so, that with regard to persons who are mentally ill, before govern­ment mas­sive­ly intervenes (no matter how well motivated), it must comply with procedural protections such as the 10-day notice require­ment.  Those proce­dur­al safe­guards are not mere techni­cali­ties which may be rou­tinely disre­garded by the State.  Rather, they are essen­tial tools to protect the liberty interests of persons alleged to be mentally ill.  
In re DeLong
, 289 Ill. App. 3d 842, 844-45, 682 N.E.2d 1189, 1190 (1997).  More­over, because the invol­un­tary admin­is­tra­tion of mental health servic­es impli­cates funda­mental liberty inter­ests, stat­utes governing the applicable procedures should be construed narrow­ly.  
In re Barbara H.
, 183 Ill. 2d 482, 498, ___ N.E.2d ___, ___ (1998).  

As we earlier noted, section 2-107.1(a)(1) of the Code provides that the "petitioner shall deliver a copy of the peti­

tion, and notice of the time and place of the hearing, to the respon­dent [and] his or her attorney, *** no later than 10 days prior to the date of the hearing."  405 ILCS 5/2-107.1(a)(1) (West Supp. 1997)).  Although section 2-107.1 does not specif­i­

cal­ly prohib­it waiver, it does not specifically provide for it either.  Had the legislature intended to allow a respondent alleged to be in need of involun­tary treatment to waive his statutory right to have at least 10 days' notice prior to a hearing on a petition for admin­istra­tion of psycho­tropic medica­

tion, it would have said so.  Indeed, the legislature did just that in section 3-805 of the Code, which provides, in pertinent part, as follows:

"Every respondent alleged to be subject to involuntary admission shall be represented by counsel.  ***  A hearing shall not proceed when a respondent is not represented by coun­

sel 
unless
, 
after
 
conferring
 
with
 
counsel
, 
the
 
respondent
 
requests
 
to
 
represent
 
himself
 
and
 
the
 
court
 
is
 
satisfied
 
that
 
the
 
respon­

dent
 
has
 
the
 
capacity
 
to
 
make
 
an
 
informed
 
waiver
 
of
 
his
 
right
 
to
 
counsel
."  (Emphasis added.)  405 ILCS 5/3-805 (West 1996).  

In our judg­ment, allow­ing a respon­dent to waive his statu­to­ry right to have at least 10 days' notice prior to a hearing on a petition for administra­tion of psychotropic medica­tion is ill-

advised because of (1) the underlying legis­la­tive intent, which is inconsis­tent with waiver; (2) the language of section 2-

107.1(a)(1) of the Code; and (3) the diffi­culty in the trial court's making an ade­quate record of a respondent's waiver.  

Thus, we hold that a respondent alleged to be subject to administration of psychotropic medication against his will cannot make an informed waiver of his right to have at least 10 days' notice prior to a hearing on a petition for administra­tion of psychotropic medica­tion, pursuant to section 2-107.1(a)(1) of the Code.  Moreover, consistent with this court's discussion of the Code's "separate" hearing requirement of section 2-

107.1(a)(2) in 
Robin­son
, we also hold that the trial court cannot, consistent with that re­quire­ment, attempt to conduct "separate hearings" during the same hearing and enter separate findings on each peti­tion.  See 
Robinson
, 287 Ill. App. 3d at 1092, 679 N.E.2d at 821 (based on the notice requirements set forth in sections 3-611 (405 ILCS 5/3-611 (West 1994)) and 2-

107.1(a)(1) of the Code, "sepa­rate hear­ings would have to be held," that is, hear­ings held on 
differ­ent
 
days
).         

We nonetheless affirm the trial court's decision in this case because (1) no reviewing court has previously so held, at least not explicitly; and (2) the trial court here seemed partic­ularly aware of the con­cerns at issue and did a very scrupulous job of trying to assure that waiver was in respondent's best inter­ests.   We have chosen to provide no detail regard­ing what the court did in this case because we do not want to provide a "road map" for future waivers.

In so concluding, we urge strict compliance with all procedural safeguards set forth in the Code and caution that failure to follow those proce­dures creates the likelihood of rever­sal.  See 
In re Luker
, 255 Ill. App. 3d 367, 373, 627 N.E.2d 1166, 1170 (1993) (Knecht, J., dissenting) ("When the State points the finger at a person and says you are mentally ill and we want to involuntarily confine you [(or involuntarily medicate you)], the State should be required to follow the rules"). 

B.  Form of the Petition for Administration

of Psychotropic Medication

Respondent also challenges the form of the petition for administration of psychotropic medication.  Specifically, he contends that the State failed to include the follow­ing statu­to­

ri­ly mandat­ed components in its petition:  (1) that the peti­

tioner had made a good-faith attempt to deter­mine whether respon­

dent had executed a power of attorney for health care or a declaration for mental health treatment; (2) a designa­tion of the "persons" authorized to administer the medica­tion; and (3) the specific medications and the authorized range of dosages (405 ILCS 5/2-107.1(a)(1) (West Supp. 1997)).

Initially, we note that section 2-107.1(a)(1) of the Code does not require that the petitioner set forth in the petition either a designation of the persons authorized to administer the medication or the specific medications and autho­

rized range of dosages.  See 405 ILCS 5/2-107.1(a)(1) (West Supp. 1997).  However, that section does provide that the petition shall state that the petitioner made a good-faith attempt to determine whether the respondent had executed a power of attorney for health care or a declaration for mental health treatment and obtain copies of those instruments if they exist (405 ILCS 5/2-

107.1(a)(1) (West Supp. 1997)).  The petition in this case did not contain such an allegation.  Nonetheless, we agree with the State that any error here was harmless because neither the record before us nor respondent in his brief indicates that such instru­

ments actually existed in this case.  Once again, however, we caution that because noncompliance with the statute 
in
 
this
 
case
 does not result in reversal, it would be incorrect to assume that future instances of noncompliance will yield the same result.

C.  The Trial Court's Order for Invol­untary Hospitalization

Respondent also contends that the trial court failed to include the follow­ing statu­to­ri­ly mandat­ed components in its order:  (1) the specific medications and the authorized range of dosages authorized; and (2) a designa­tion of the "persons" autho­

rized to administer the medica­tion (405 ILCS 5/2-107.1(a)(1) (West Supp. 1997)).  In response, the State argues that respon­

dent has forfeited this contention on appeal.  We agree with the State.

The trial court's order allowing the clinical staff at either Provena or Zeller to administer psychotropic medication to respondent did not include either (1) the specific medications and the authorized range of dosages authorized; or (2) a desig­na­tion of the "persons" autho­rized to administer the medica­tion, pursuant to section 2-107.1(a)(6) of the Code (405 ILCS 5/2-

107.1(a)(6) (West Supp. 1997)).  However, respondent failed to object to the alleged errors when the court entered this order, nor does he argue on appeal that he was somehow prejudiced by the omis­sions in the order.  Moreover, the record here shows that Lee had treated respon­dent for several years and was very famil­iar with the appropriate medication and dosages for respondent.  We believe that consistent with 
Splett
 and 
Nau
, failure to strictly comply with section 2-107.1(a)(6) of the Code in this case does not require reversal because (1) respondent failed to object to the alleged errors at the trial level; (2) the evidence presented showed that respondent's attending physician was intimately famil­iar with respondent's treatment protocol; and (3) respondent does not contend that he was prejudiced by the omissions in the court's order.

Nonetheless, the issue concerns us because no reason exists why it should ever be a problem for a trial court in the first place.  Courts who handle these cases should develop a check­list based upon section 2-107.1(a)(6) of the Code and use it when entering orders for administration of involun­tary treat­ment.   We also note that we agree with respon­dent that an order for admin­istra­tion of invol­untary treatment issued under section 2-107.1(a) of the Code should designate the "persons" authorized to adminis­ter such treatment, meaning specifically named indi­vid­u­als, such as Lee, respondent's attend­ing physician in this case.  The requirement of such a designation reflects the legislature's concerns about the "substantially invasive nature of psychotropic substances and their significant side effects."  
C.E.
, 161 Ill. 2d at 214, 641 N.E.2d at 351.  Thus, this require­

ment serves to ensure that only a limited number of designated--

and presumably well-trained--individuals will be able to adminis­

ter these powerful drugs, pursuant to a court order, to an unwill­ing recipi­ent.            

D.  Sufficiency of the Evidence at the Hearing on the

Petition for Administration of Psychotropic Medication

[Nonpublishable material under Supreme Court Rule 23 omit

ted.]

III.  CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.         

KNECHT, P.J., and McCULLOUGH, J., concur.