*In re* DARRELL W. MILLER, a Person Found Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Darrell W. Miller, Respondent-Appellant).

Fourth District   No. 4—98—0185

Opinion filed December 31, 1998.

Jeff M. Plesko, of Guardianship & Advocacy Commission, of Anna, and William J. Conroy, Jr., of Athens, for appellant.

Michael D. Clary, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

On January 27, 1998, following a bifurcated hearing, the trial court entered two separate orders (1) finding that respondent, Darrell W. Miller, was in need of involuntary admission to the Department of Mental Health and Developmental Disabilities (Department) at the George A. Zeller Mental Health Center (Zeller) (405 ILCS 5/3—700 *et seq.* (West 1996)); and (2) directing the staff at Zeller or Provena United Samaritans Medical Center (Provena) to administer psychotropic medication to respondent (405 ILCS 5/2—107.1 (West Supp. 1997) (eff. December 1, 1997)).

Respondent appeals, arguing as follows: (1) certain procedural defects require reversal of the trial court's order, including (a) the State's failure to provide formal notice of the petition for administration of psychotropic medication and the hearing to be held thereon, and (b) the trial court's conducting a single, combined proceeding on

that petition and the petition for involuntary hospitalization; (2) certain omissions in the petition for administration of psychotropic medication require reversal; (3) certain omissions in the court's order directing the administration of psychotropic medication require reversal of the order; and (4) the evidence presented was insufficient to support the court's orders directing involuntary hospitalization and administration of psychotropic medication. We affirm.

## I. BACKGROUND

On January 19, 1998, respondent's community caseworker filed a petition under section 3—700 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3—700 et seq. (West 1996)) to have respondent involuntarily admitted to a mental health facility. The petition alleged that respondent was mentally ill and, because of that illness, he could reasonably be expected to inflict serious physical harm to himself or another in the near future. The petition also alleged that when the caseworker brought respondent a "spending check" on January 19, respondent became angry and cursed at the caseworker for being late. Respondent also allegedly lunged at the caseworker and said, "I'll kill you next time."

On January 20, 1998, the trial court ordered that respondent be detained for examination. That same day, respondent's attending physician at Provena, Dr. Brumyong Lee, petitioned the court under section 2—107.1 of the Code for an order authorizing his facility's clinical staff to administer psychotropic medication to respondent against respondent's will (405 ILCS 5/2—107.1 (West Supp. 1997)).

On January 22, 1998, respondent was given notice of a hearing to be held on January 27, 1998, but that notice did not indicate the nature or substance of the hearing, nor does the record indicate that respondent ever personally received a copy of either the petition for involuntary hospitalization or the petition for psychotropic medication.

On January 27, 1998, the trial court conducted a hearing on the petition for involuntary hospitalization. At that hearing, Lee, a psychiatrist, testified that he was very familiar with respondent's case and had treated him numerous times, both as an inpatient and an outpatient. When respondent "became decompensated," that is, when he did not follow his recommended treatment, he suffered from auditory hallucinations and became paranoid. Based on Lee's personal knowledge of respondent's case, his discussions with other members of respondent's treatment team, and his review of respondent's mental health records, Lee opined that respondent was suffering from a chronic psychotic condition—that is, some form of schizophrenia.

When Lee examined respondent on January 19, 1998, pursuant to the trial court's order, respondent had a "dirty" appearance and did not seem able to take care of his basic needs, such as bathing. Respondent also refused any type of treatment or medication and told Provena staff members that they were trying to poison him. In addition, staff members observed respondent carrying on conversations with imaginary persons, although respondent denied that he was hearing voices.

Lee opined that respondent reasonably could be expected to inflict serious harm to himself or another in the future. Lee based his opinion on respondent's history of violent behavior when he does not take his prescribed medication, including (1) a prior arrest for criminal damage to property; and (2) respondent's threat of physical harm to and near attack of his caseworker on January 19, 1998. Lee also opined that, because of respondent's mental illness, he was unable to care for himself or provide for his basic needs. When respondent takes his prescribed medication, he is able to take care of himself and act more reasonably; however, his compliance "has been extremely poor." Because respondent has such poor compliance with his recommended treatment, Lee recommended that respondent be admitted to Zeller and receive "long-term treatment to stabilize his condition."

On cross-examination, Lee testified that he had never actually seen respondent damage property, nor had respondent exhibited violent behavior toward Lee. Lee stated that respondent was not malnourished. He also stated that he had never visited respondent's apartment.

On redirect examination, Lee testified that he relied upon information he had received regarding respondent's arrest for criminal damage to property in forming his opinions regarding respondent's mental illness. It was Lee's understanding that respondent became upset because his stove did not work, and respondent tossed the stove outside his apartment and destroyed it. Lee stated that this type of information is the sort customarily relied upon by experts in his field in making diagnoses. Lee also opined that based upon Lee's experience with respondent and respondent's diagnosis, any threats of physical harm by respondent should be taken more seriously than some other individual's "stray comment."

Following the close of the State's case in chief, the trial court allowed the State to amend the petition for involuntary hospitalization to allege that respondent was mentally ill and unable to provide for his basic needs and protect himself from harm.

Respondent testified on his own behalf that he received $40 per week from his caseworker, but that amount of money was not enough

for him to "buy shampoo, laundry soap, food and cigarettes, that and everything else." When asked if he ever gets angry at others, respondent stated "Well—well, I—not all the time. When they do things to me." He also stated that he would not hurt anyone, he just told people that he would. When asked why he was not taking his prescribed medication, respondent stated as follows:

"Because—because one time Dr. Lee told me he was going to overdose me before, and—and I tell him I have side effects and they say that's just in your head or something, that ain't this, and I tried to tell them that the medication ain't right and I don't—and I don't like needles, and I try—and I tried other medicines and they—they—and—and they say, um—they say, well, that's got side effects real bad—side effects and things and he say, well, it will be okay."

Respondent further stated that he sometimes experiences side effects from his medication, such as stomachaches and other unspecified pain. Respondent also stated that when he was in jail, "they tried to poison food and everything else."

Respondent also testified that he can take care of himself and he cooks his own meals. Respondent stated that sometimes he was clean but his clothes were dirty, and he "took baths and everything else at home, and then them people tried to double charge me at the grocery store and everything else."

On cross-examination, respondent testified that the jail staff tried to poison him by spraying something on his food and "they're all trying to do me in." Respondent stated that he became upset when his landlord would not "fix things," so he picked up the stove and set it outside his apartment. He also stated that he was not taking his prescribed medication because "they try to do [him] in."

After considering the evidence and arguments of counsel, the trial court found that respondent, by virtue of his mental illness, presented a threat of harm to himself and others and was unable to care for his own basic needs. The court thus ordered that respondent be involuntarily admitted to the Department at Zeller for a period not to exceed 180 days.

Immediately following the hearing on the petition for involuntary hospitalization, the parties proceeded with the hearing on the petition for administration of psychotropic medication. At that hearing, Lee once again testified that respondent suffers from chronic mental illness, specifically schizophrenia. Lee stated that respondent had a history of multiple hospitalizations and a pattern of not taking his prescribed medication once he becomes stabilized. He also stated that respondent was currently refusing to take his prescribed medication

(Haldol), and respondent's ability to function had noticeably deteriorated because of his noncompliance. Lee also stated that when respondent takes his prescribed medication, he is able to function. Lee further stated that respondent often complained about feeling sleepy when he was taking Haldol, but Lee had not observed any "harmful side effects" over the years he had treated respondent. He opined that the benefit of treating respondent with psychotropic medication outweighed the harm. Lee had tried other "less restrictive alternatives" in treating respondent, but none had worked. He also opined that Haldol (administered by injection) is "appropriate and necessary" for respondent's mental health.

On cross-examination, Lee testified that a patient using Haldol may experience side effects, including irreversible involuntary movement, constipation, sedation, dizziness, dry mouth, and blurred vision. Lee had tried other psychotropic medications, such as Navane, but none of those medications had been effective due to respondent's poor compliance in taking medication orally. No cure exists for schizophrenia; the only treatment option constitutes psychotropic medication to stabilize patients with schizophrenia.

After considering the evidence and the arguments of counsel, the trial court ordered the staff at Zeller or Provena to administer psychotropic medication to respondent for a period not to exceed 90 days.

This appeal followed.

## II. ANALYSIS

### A. Exception to the Mootness Doctrine

The material in this section is not to be published pursuant to Supreme Court Rule 23. 166 Ill. 2d R. 23.

### B. Procedural Defects

Respondent first argues that certain procedural defects require this court to reverse the trial court's order directing the staff at Zeller or Provena to administer psychotropic medication to respondent. Specifically, he contends that the following defects require reversal: (1) the State's failure to provide him with formal notice of the petition for administration of psychotropic medication and the hearing to be held thereon; and (2) the court's conducting a single, combined proceeding on both that petition and the petition for involuntary hospitalization.

In response, the State argues, in part, that respondent has forfeited any claimed procedural defects because (1) respondent failed to object at the January 27, 1998, hearing; (2) both respondent and his attorney were present at that hearing and specifically waived any error during that hearing; and (3) no prejudice resulted. In light of the unique circumstances of this case, we agree with the State.

■ Section 2—107.1 of the Code provides, in pertinent part, as follows:

"(1) Any person 18 years of age or older, including any guardian, may petition the circuit court for an order authorizing the administration of authorized involuntary treatment to a recipient of services. *** *The petitioner shall deliver a copy of the petition, and notice of the time and place of the hearing, to the respondent, his or her attorney, any known agent or attorney-in-fact, if any, and the guardian, if any, no later than 10 days prior to the date of the hearing.* ***

(2) The court shall hold a hearing within 14 days of the filing of the petition. Continuances totaling not more than 14 days may be granted to the recipient upon a showing that the continuances are needed in order to prepare adequately for a hearing under this [s]ection. The court may, in its discretion, grant additional continuances if agreed to by all parties. *The hearing shall be separate from a judicial proceeding held to determine whether a person is subject to involuntary admission.*" (Emphasis added.) 405 ILCS 5/2—107.1(a)(1), (a)(2) (West Supp. 1997).

"Authorized involuntary treatment" is defined in section 1—121.5 of the Code and includes psychotropic medication. 405 ILCS 5/1—121.5 (West Supp. 1997).

The Supreme Court of Illinois has held that a trial court's failure to strictly comply with notice requirements in an involuntary hospitalization proceeding did not require reversal when (1) the respondent failed to object; and (2) the respondent had actual notice of the proceedings. See *In re Splett*, 143 Ill. 2d 225, 231-32, 572 N.E.2d 883, 886 (1991); *In re Nau*, 153 Ill. 2d 406, 419-20, 607 N.E.2d 134, 140-41 (1992).

In *Splett*, the respondent did not receive formal notice of the hearing on the involuntary hospitalization petition but was present at the hearing and was represented by counsel, who actively presented a defense. The supreme court held that the defect in notice did not require reversal of the order. In so holding, the court focused on the fact that the respondent had clearly received actual notice of the hearing on the petition and the respondent was in no way prejudiced by the lack of formal notice. *Splett*, 143 Ill. 2d at 232, 572 N.E.2d at 886.

In *Nau*, the respondent was served with a notice of hearing on a petition for emergency involuntary admission, but he was served before the petition was filed. Citing *Splett*, the supreme court affirmed the commitment order because (1) the respondent had received actual notice of the hearing; (2) neither the respondent nor his counsel ever objected in the trial court to being served with notice of a hearing before the petition was filed; and (3) the "respondent does not assert,

and the record does not indicate, that respondent was in any manner prejudiced by the fact that the notice was served before the trial court had a chance to direct it." *Nau*, 153 Ill. 2d at 419, 607 N.E.2d at 140.

More recently, in *In re C.E.*, 161 Ill. 2d 200, 225-27, 641 N.E.2d 345, 356-57 (1994), the supreme court applied *Splett* in holding that the trial court's failure to strictly comply with notice requirements in proceedings to administer psychotropic medication did not amount to a due process violation where the respondent had (1) actual notice of the proceedings, and (2) ample opportunity to prepare a defense.

In *In re Robinson*, 287 Ill. App. 3d 1088, 1091, 679 N.E.2d 818, 820 (1997), the petition for administration of psychotropic medication was filed on the day of the hearing for involuntary hospitalization. Thus, the respondent did not receive a copy of the petition for the administration of psychotropic medication or notice of hearing on that petition 10 days prior to the date of hearing, as required by section 2—107.1(a)(1) of the Code. The transcript of the single hearing conducted on both petitions showed that the respondent's counsel announced that he was ready for trial and neither the respondent nor her counsel objected to the State's failure to serve her with a copy of the petition or the notice of hearing. Nonetheless, this court vacated the trial court's medication order and wrote the following:

"Here, unlike *Splett* and its progeny, we do not believe the procedural defects can be deemed harmless or that respondent had actual notice of the petition for psychotropic medication with ample opportunity to prepare for a defense. *** [Instead,] respondent had no notice of the petition for administration of psychotropic medication until the day of the hearing and had no opportunity to prepare a defense." *Robinson*, 287 Ill. App. 3d at 1092, 679 N.E.2d at 821.

In so concluding, this court noted that it could not determine from the record that counsel's performance demonstrated that he had an opportunity to prepare for a hearing on the petition for administration of psychotropic medication. *Robinson*, 287 Ill. App. 3d at 1092, 679 N.E.2d at 821.

▬ This court in *Robinson* also addressed the Code's separate hearing requirement as follows:

"[I]n enacting the requirement of 'separate' hearings for petitions for involuntary commitment and administration of psychotropic medication under section 2—107.1(a)(2) [citation], the legislature apparently intended to ensure that psychotropic medication petitions are not just simply appended to involuntary commitment petitions. *Based on the notice requirements, if followed, an involuntary commitment proceeding would have to be held within five days of filing the petition* [citation], *where administration of psychotropic medication proceedings could not be held any earlier than*

*10 days after filing the petition* [citation]. *Thus, separate hearings would have to be held.*" (Emphasis added.) *Robinson,* 287 Ill. App. 3d at 1092, 679 N.E.2d at 821.

Although the record in the present case contains a petition for administration of psychotropic medication, it does not contain a proof of service of that petition. See *In re Ellis,* 284 Ill. App. 3d 691, 693, 672 N.E.2d 893, 894 (1996) ("The burden is upon the State to affirmatively demonstrate that it has complied with the mandates of the Code"). In addition, although the record contains a notice of hearing to be conducted on January 27, 1998, that notice did not state the substance or nature of that hearing. However, the transcript of the January 27, 1998, hearing clearly shows that that hearing originally was set only for the petition for involuntary hospitalization.

Thus, similar to the situation in *Robinson,* respondent here had no actual notice—until immediately following the hearing on the petition for involuntary hospitalization—that the trial court also was going to conduct a hearing on the petition for administration of psychotropic medication. Like this court in *Robinson,* we cannot determine from the record that counsel's performance indicates that she had ample opportunity to prepare for a hearing on the petition for administration of psychotropic medication. However, unlike *Robinson,* not only did respondent and his counsel fail to object to the State's failure to serve him with a copy of the petition for administration of psychotropic medication or notice of hearing, respondent and his counsel unequivocally waived the 10-day notice of hearing requirement and specifically agreed to a hearing on that petition immediately following the involuntary hospitalization hearing.

■ Thus, this case presents the question of whether a respondent may make an informed waiver of his statutory right to receive notice of hearing on a petition for administration of psychotropic medication at least 10 days prior to the date of the hearing, pursuant to section 2—107.1(a)(1) of the Code (405 ILCS 5/2—107.1(a)(1) (West Supp. 1997). The legislature, as the policy-making body of the State of Illinois, has determined, and appropriately so, that with regard to persons who are mentally ill, before government massively intervenes (no matter how well motivated), it must comply with procedural protections such as the 10-day notice requirement. Those procedural safeguards are not mere technicalities which may be routinely disregarded by the State. Rather, they are essential tools to protect the liberty interests of persons alleged to be mentally ill. *In re DeLong,* 289 Ill. App. 3d 842, 844-45, 682 N.E.2d 1189, 1190 (1997). Moreover, because the involuntary administration of mental health services. implicates fundamental liberty interests, statutes governing the ap-

plicable procedures should be construed narrowly. *In re Barbara H.,* 183 Ill. 2d 482, 498 (1998).

As we earlier noted, section 2—107.1(a)(1) of the Code provides that the "petitioner shall deliver a copy of the petition, and notice of the time and place of the hearing, to the respondent [and] his or her attorney, *** no later than 10 days prior to the date of the hearing." 405 ILCS 5/2—107.1(a)(1) (West Supp. 1997). Although section 2—107.1 does not specifically prohibit waiver, it does not specifically provide for it either. Had the legislature intended to allow a respondent alleged to be in need of involuntary treatment to waive his statutory right to have at least 10 days' notice prior to a hearing on a petition for administration of psychotropic medication, it would have said so. Indeed, the legislature did just that in section 3—805 of the Code, which provides, in pertinent part, as follows:

"Every respondent alleged to be subject to involuntary admission shall be represented by counsel. *** A hearing shall not proceed when a respondent is not represented by counsel *unless, after conferring with counsel, the respondent requests to represent himself and the court is satisfied that the respondent has the capacity to make an informed waiver of his right to counsel.*" (Emphasis added.) 405 ILCS 5/3—805 (West 1996).

In our judgment, allowing a respondent to waive his statutory right to have at least 10 days' notice prior to a hearing on a petition for administration of psychotropic medication is ill-advised because of (1) the underlying legislative intent, which is inconsistent with waiver; (2) the language of section 2—107.1(a)(1) of the Code; and (3) the difficulty in the trial court's making an adequate record of a respondent's waiver.

■ Thus, we hold that a respondent alleged to be subject to administration of psychotropic medication against his will cannot make an informed waiver of his right to have at least 10 days' notice prior to a hearing on a petition for administration of psychotropic medication, pursuant to section 2—107.1(a)(1) of the Code. Moreover, consistent with this court's discussion of the Code's "separate" hearing requirement of section 2—107.1(a)(2) in *Robinson,* we also hold that the trial court cannot, consistent with that requirement, attempt to conduct "separate hearings" during the same hearing and enter separate findings on each petition. See *Robinson,* 287 Ill. App. 3d at 1092, 679 N.E.2d at 821 (based on the notice requirements set forth in sections 3—611 (405 ILCS 5/3—611 (West 1994)) and 2—107.1(a)(1) of the Code, "separate hearings would have to be held," that is, hearings held on *different days*).

■ We nonetheless affirm the trial court's decision in this case because (1) no reviewing court has previously so held, at least not

explicitly; and (2) the trial court here seemed particularly aware of the concerns at issue and did a very scrupulous job of trying to assure that waiver was in respondent's best interests. We have chosen to provide no detail regarding what the court did in this case because we do not want to provide a "road map" for future waivers.

In so concluding, we urge strict compliance with all procedural safeguards set forth in the Code and caution that failure to follow those procedures creates the likelihood of reversal. See *In re Luker*, 255 Ill. App. 3d 367, 373, 627 N.E.2d 1166, 1170 (1993) (Knecht, J., dissenting) ("When the State points the finger at a person and says you are mentally ill and we want to involuntarily confine you [(or involuntarily medicate you)], the State should be required to follow the rules").

### C. Form of the Petition for Administration of Psychotropic Medication

■ Respondent also challenges the form of the petition for administration of psychotropic medication. Specifically, he contends that the State failed to include the following statutorily mandated components in its petition: (1) that the petitioner had made a good-faith attempt to determine whether respondent had executed a power of attorney for health care or a declaration for mental health treatment; (2) a designation of the "persons" authorized to administer the medication; and (3) the specific medications and the authorized range of dosages (405 ILCS 5/2—107.1(a)(1) (West Supp. 1997)).

Initially, we note that section 2—107.1(a)(1) of the Code does not require that the petitioner set forth in the petition either a designation of the persons authorized to administer the medication or the specific medications and authorized range of dosages. See 405 ILCS 5/2—107.1(a)(1) (West Supp. 1997). However, that section does provide that the petition shall state that the petitioner made a good-faith attempt to determine whether the respondent had executed a power of attorney for health care or a declaration for mental health treatment and obtain copies of those instruments if they exist (405 ILCS 5/2—107.1(a)(1) (West Supp. 1997)). The petition in this case did not contain such an allegation. Nonetheless, we agree with the State that any error here was harmless because neither the record before us nor respondent in his brief indicates that such instruments actually existed in this case. Once again, however, we caution that because noncompliance with the statute *in this case* does not result in reversal, it would be incorrect to assume that future instances of noncompliance will yield the same result.

### D. The Trial Court's Order for Involuntary Hospitalization

■ Respondent also contends that the trial court failed to include

the following statutorily mandated components in its order: (1) the specific medications and the authorized range of dosages authorized; and (2) a designation of the "persons" authorized to administer the medication (405 ILCS 5/2—107.1(a)(1) (West Supp. 1997)). In response, the State argues that respondent has forfeited this contention on appeal. We agree with the State.

The trial court's order allowing the clinical staff at either Provena or Zeller to administer psychotropic medication to respondent did not include either (1) the specific medications and the authorized range of dosages authorized; or (2) a designation of the "persons" authorized to administer the medication, pursuant to section 2—107.1(a)(6) of the Code (405 ILCS 5/2—107.1(a)(6) (West Supp. 1997)). However, respondent failed to object to the alleged errors when the court entered this order, nor does he argue on appeal that he was somehow prejudiced by the omissions in the order. Moreover, the record here shows that Lee had treated respondent for several years and was very familiar with the appropriate medication and dosages for respondent. We believe that, consistent with *Splett* and *Nau*, failure to strictly comply with section 2—107.1(a)(6) of the Code in this case does not require reversal because (1) respondent failed to object to the alleged errors at the trial level; (2) the evidence presented showed that respondent's attending physician was intimately familiar with respondent's treatment protocol; and (3) respondent does not contend that he was prejudiced by the omissions in the court's order.

Nonetheless, the issue concerns us because no reason exists why it should ever be a problem for a trial court in the first place. Courts who handle these cases should develop a checklist based upon section 2—107.1(a)(6) of the Code and use it when entering orders for administration of involuntary treatment.

We also note that we agree with respondent that an order for administration of involuntary treatment issued under section 2—107.1(a) of the Code should designate the "persons" authorized to administer such treatment, meaning specifically named individuals, such as Lee, respondent's attending physician in this case. The requirement of such a designation reflects the legislature's concerns about the "substantially invasive nature of psychotropic substances and their significant side effects." *C.E.*, 161 Ill. 2d at 214, 641 N.E.2d at 351. Thus, this requirement serves to ensure that only a limited number of designated—and presumably well-trained—individuals will be able to administer these powerful drugs, pursuant to a court order, to an unwilling recipient.

### E. Sufficiency of the Evidence at the Hearing on the Petition for Administration of Psychotropic Medication

The material in this section is not to be published pursuant to Supreme Court Rule 23. 166 Ill. 2d R. 23.

### F. Sufficiency of the Evidence at the Hearing on the Petition for Involuntary Hospitalization

The material in this section is not to be published pursuant to Supreme Court Rule 23. 166 Ill. 2d R. 23.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

KNECHT, P.J., and McCULLOUGH, J., concur.