*In re* MARGARET S., Alleged to be a Person Subject to the Involuntary Administration of Psychotropic Medication (The People of the State of Illinois, Petitioner-Appellee, v. Margaret S., Respondent-Appellant).

Fifth District   No. 5—03—0458

Opinion filed March 11, 2004.—Motion to publish granted April 20, 2004.

Anthony E. Rothert, of Guardianship and Advocacy Commission, of Alton, for appellant.

Stephen E. Norris, of State's Attorneys Appellate Prosecutor's Office, of Mt. Vernon, for the People.

JUSTICE HOPKINS delivered the opinion of the court:

The respondent-appellant, Margaret S., had resided in a nursing home since May 2000. In mid-July 2003, she was transferred to Gateway Regional Medical Center (Gateway) with diagnoses of dementia and psychosis.

On July 21, 2003, psychiatrist Dr. Narishma Muddasani filed a petition for the involuntary administration of psychotropic medication. The respondent countered with a motion for an independent medical examination. The circuit court granted the respondent's motion for the independent examination but denied her motion to continue the hearing on the petition for involuntary medication pending the outcome of the independent examination and, immediately following the hearing, granted the petition. The respondent appeals the order allowing involuntary medication. The State has filed a confession of error. We reverse the order as manifestly erroneous. *In re John R.*, 339 Ill. App. 3d 778, 781, 792 N.E.2d 350, 353 (2003).

The petition for involuntary medication sought to treat the respondent with Risperdal, Lexapro, Haldol, and Prozac. The petition alleged that the respondent had become disoriented as to time and place and that she was delusional because she believed that people

were trying to harm her and would not allow the nursing staff to touch her. She had made vague threats to staff members. The petition alleged that the administration of the designated drugs would reduce her confusion and paranoia and allow her to return to a nursing home.

On July 22, 2003, the respondent filed a motion to dismiss the petition on the basis that it had not been served on the respondent's agent named in her power of attorney for health care. Also on that date, the respondent filed a motion for an independent examination pursuant to section 3—804 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3—804 (West 2002)). The motion alleged that, given the potentially deadly side effects of Risperdal when administered to elderly patients, counsel could not prepare an adequate defense without the aid of an independent expert.

The motion to dismiss and the petition for involuntary medication were consolidated for a hearing on July 24, 2003. Prior to the taking of testimony, the respondent's counsel withdrew his motion to dismiss because the respondent's agent had been given actual notice and was present at the proceeding. Counsel then called the court's attention to his motion for an independent medical examination and requested a continuance of the hearing until the examination was completed. The court denied the continuance, noting the respondent's advanced age, 95, and the Code's interest in expediting petitions for involuntary medication.

Dr. Muddasani testified that when admitted to Gateway, the respondent had been extremely suspicious and paranoid and afraid that people were going to attack her. She picked fights and assaulted staff when they tried to help her. She had also experienced feelings of helplessness, worthlessness, dementia, and depression. These symptoms had persisted for approximately two months. She had been treated with an antidepressant, Celexa, but the doctor opined that Celexa would not treat psychosis or dementia. The doctor believed that treatment with Risperdal would decrease or eliminate the paranoia, suspiciousness, and aggression exhibited by the respondent; an alternative to Risperdal would be Haldol. The doctor admitted that there were risks or dangers with respect to all four of the medications sought. Risperdal could precipitate a stroke in elderly patients. Furthermore, it increased the chance of diabetes, weight gain, extrapyramidal symptoms like tardive dyskinesia (involuntary twitching of the face and the tongue), and cardiac death. Haldol could produce "cardiac irregularities." On direct examination the doctor was queried:

> "Q. And well—does she have any current condition that you are aware of that would put her at an extraordinary risk of harm from any of these medications?

A. In considering her age and being 95, the Risperdal, it does put her at a high risk for vascular accident.''

Given the potentially deadly side effects of the medications, the doctor opined that he still believed that the intended benefits of the treatment outweighed the dangers to the respondent because she could be given the smallest doses possible, "considering her age and frail status." A small dosage would consist of up to 2 milligrams per day of Risperdal, although the doctor admitted that the petition sought a dosage of up to 16 milligrams per day, but he did not foresee that amount being administered. On cross-examination, the doctor admitted that the older a person is, the higher the risk of precipitating vascular accidents, but he believed that death by Risperdal was only a remote possibility. The doctor conceded that he could treat the respondent with alternate medications, but he stated that those drugs would have a sedative effect on the respondent; they could cause her to fall and break her bones, so he did not want to prescribe them. Dr. Muddasani was the sole witness at the hearing.

At the conclusion of the hearing, the circuit court granted the petition for involuntary medication and granted the respondent's motion for an independent examination. The order allowing the independent examination directed that a psychiatrist who had not been involved in the respondent's treatment should determine whether the respondent was truly psychotic and whether Risperdal was the best choice as a primary treatment for the elderly respondent. The court noted that depending on the results of the independent examination, the respondent could reopen the proofs. The court then stayed the administration of Risperdal for one week. This court stayed the administration of Risperdal and Haldol pending review.

■ The respondent now claims error in the State's failure to comply with section 2—102(a—5) of the Code (405 ILCS 5/2—102(a—5) (West 2002)). The statute provides that the respondent's substitute decision maker, if any, shall be provided with the same written information that is required to be presented to the respondent in writing. 405 ILCS 5/2—102(a—5) (West 2002). Here, the respondent asserts that her agent was not provided with information about the side effects, benefits, risks, and alternatives to the proposed treatment in writing and that, therefore, the order allowing involuntary treatment should be reversed. However, we note that although the respondent raised this claim below, she withdrew it on the eve of the hearing and, therefore, has forfeited review. Accordingly, we will not address it. See *In re Miller*, 301 Ill. App. 3d 1060, 1073, 705 N.E.2d 144, 152 (1998).

Next, the respondent claims error in the circuit court's failure to

continue the hearing on the petition for involuntary medication until such time the independent examination was complete. We believe the court abused its discretion in denying the continuance, and we reverse on this basis. See *In re Nancy A.*, 344 Ill. App. 3d 540, 550, 801 N.E.2d 565, 575 (2003).

■ Section 2—107.1(a—5) (405 ILCS 5/2—107.1(a—5) (West 2002)) governs procedures for involuntary treatment under the Code. The statute provides in pertinent part:

"(2) The court shall hold a hearing within 7 days of the filing of the petition. The People, the petitioner, or the respondent shall be entitled to a continuance of up to 7 days as of right. An additional continuance of not more than 7 days may be granted to any party (i) upon a showing that the continuance is needed in order to adequately prepare for or present evidence in a hearing under this Section or (ii) under exceptional circumstances. The court may grant an additional continuance not to exceed 21 days when, in its discretion, the court determines that such a continuance is necessary in order to provide the recipient with an examination pursuant to Section 3—803 or 3—804 of this Act, to provide the recipient with a trial by jury as provided in Section 3—802 of this Act, or to arrange for the substitution of counsel as provided for by the Illinois Supreme Court Rules. ***
        ***
(4) Authorized involuntary treatment shall not be administered to the recipient unless it has been determined by clear and convincing evidence that all of the following factors are present:
                * * *
    (D) That the benefits of the treatment outweigh the harm."
405 ILCS 5/2—107.1(a—5)(2), (a—5)(4)(D) (West 2002).

■ Pursuant to section 3—804 of the Code, a respondent is entitled to secure an independent examination by a physician, qualified examiner, clinical psychologist, or other expert of his choice, and if unable to obtain an examination, the respondent may request the court to order such an examination. 405 ILCS 5/3—804 (West 2002).

■ Here, under the Code, the respondent was entitled to a minimum seven-day extension of time. Thereafter, the court had the discretion to grant another seven-day extension and, finally, another extension, not to exceed 21 days when an independent examination is sought under section 3—804. The respondent's motion for an independent examination was filed only one day after the petition for involuntary medication. Moreover, counsel sought such a continuance because the result of the independent examination might provide him with a defense to the doctor's petition for involuntary medication. The court's denial of the continuance clearly prejudiced the respondent

because it left her with little possibility of countering Dr. Muddasani's testimony with her own expert. At the hearing, the respondent's counsel pointed out that the studies indicating that Risperdal caused strokes in elderly people were of fairly recent origin, and therefore, the results of an independent examination may well have been helpful to the respondent. In a case where the potentially severe side effects of Haldol and Risperdal such as cardiac arrest and stroke, euphemistically referred to by Dr. Muddasani as "vascular accidents," increase in direct proportion to a patient's age, the importance of an independent examination becomes manifest. After all, the frail respondent was 95 years old at the time of the hearing, and you cannot get much older than that. We also note that although the doctor testified that it was only remotely possible that the ingestion of Risperdal could be fatal, he conceded that the respondent's advanced age placed her at high risk for a vascular accident. Accordingly, we cannot find that the petitioner proved by clear and convincing evidence that the benefits of the treatment outweighed the harm to the respondent. See 405 ILCS 5/2—107.1(a—5)(4)(D) (West 2002). Finally, the circuit court's remedy to allow leave to "reopen" if the independent examination "indicate[d] something" is dubious because an order allowing the involuntary administration of psychotropic medication is a final judgment, not an interlocutory order subject to modification at any time. 405 ILCS 5/3—816(b) (West 2002).

We are mindful of the Code's interest in expediting petitions for involuntary medication. But that interest must yield to the liberty interests of an incompetent patient faced with the possibility of being forcibly medicated. See *In re John R.*, 339 Ill. App. 3d at 785, 792 N.E.2d at 356. Given the respondent's advanced age and the recentness of the studies regarding the potentially severe side effects of the psychotropic drugs on the elderly, the respondent's motion for a continuance in order to prepare a defense should have been granted.

Reversed.

MAAG and KUEHN, JJ., concur.