Filed 5/7/08                    NO. 4-07-0372

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re:  Denetra P., a Person Found Subject to | ) | Appeal from |
| Authorized Involuntary Treatment, | ) | Circuit Court of |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Sangamon County |
|        Petitioner-Appellee, | ) | No. 07MH228 |
|        v. | ) | |
| DENETRA P., | ) | Honorable |
|        Respondent-Appellant. | ) | George H. Ray, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE APPLETON delivered the opinion of the court:

A psychiatrist at McFarland Mental Health Center, Aura M. Eberhardt, petitioned for authority for the involuntary administration of psychotropic medications to respondent, Denetra P.  See 405 ILCS 5/2-107.1 (West 2006).  After an evidentiary hearing in which Eberhardt and respondent testified, the trial court granted the petition. We reverse the judgment because the petition lacks any allegation that Eberhardt made a good-faith attempt to determine whether respondent had executed a power of attorney for health care or a declaration for mental-health treatment (405 ILCS 5/2-107.1(a-5)(1) (West 2006)).  According to respondent's testimony and her brief, she had executed a power of attorney for health care.

I. BACKGROUND

Eberhardt testified she was treating respondent for "bipolar affective disorder type I, severe, manic, with psychotic symptoms."  Scott Kains, the assistant State's Attorney, asked Eberhardt:

"Q. Does she have a guardian?

A. No.

[RESPONDENT]: Yes, I do.

MR. KAINS: Q. Does she have a power of attorney for health care?

[RESPONDENT]: I do.

MR. KAINS: Q. Doctor, do you know?

A. To my knowledge, no guardian or power of attor-ney.

[RESPONDENT]: Memorial Medical Center [(a hospital in Springfield)] has it. Thank you very much.

MR. KAINS: Q. And[,] Doctor, to your knowledge, does she have a declaration for mental[-]health treatment under the Illinois Mental Health Treatment Preference Declaration Act?

A. No, she does not.

Q. Is there anything in your chart, Doctor, to indicate that she has a guardian or power of attorney?

A. No.

[RESPONDENT]: I told them--I verbally told them on several occasions.

[RESPONDENT'S ATTORNEY]: Hold on a second."

On cross-examination, Eberhardt testified: "[Respondent] had a previous hospitalization in[] [January 2006], I believe, and that was in New York, as per the

records that we have."  Eberhardt testified, however, that she had no records pertaining to that hospitalization--and, thus, did not know if respondent previously had been administered psychotropic medication–because respondent refused to sign a release.  At that point, respondent interjected:  "I did sign a release, and the records are here in Springfield.  I'm sorry."  Respondent's attorney then asked Eberhardt:

"Q. Have you made a good[-]faith effort to explore whether or not she does have a power of attorney or a guardian?

A. I am not--until today when she mentioned that she has a power of attorney, I have no way of knowing that she has a power of attorney.  And I, myself, did not make any attempts to try to find out if she has one.

Q. Is that typically done by someone other than yourself?

A. Right.  The social worker usually helps with that type of search.

Q. But are you aware of whether or not a search was made?

A. No, I'm not aware."

Respondent took the stand, and her attorney asked her:

"Q. Who is your power of attorney [sic]?

A. My power of attorney is in New York, and he is my pastor to the sister church of Jerry Doss here in Springfield,

- 3 -

Illinois[,] at Abundant Faith.

Q. What is his name?

A. His name is Senior Pastor Donald McClerkland

(phonetically)."

## II. ANALYSIS

### A. Statutory Conditions for the Involuntary Administration of Medication in a Nonemergency

An adult recipient of mental-health services has a right to refuse medication (405 ILCS 5/2-107(a) (West 2006)), and the refusal will be honored except in two circumstances. The first circumstance is an emergency, namely, the medication is "necessary to prevent the recipient from causing serious and imminent physical harm to the recipient or others and no less[-]restrictive alternative is available." 405 ILCS 5/2-107(a) (West 2006). The second circumstance is not an emergency, but the recipient meets the criteria in section 2-107.1(a-5)(4) of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/2-107.1(a-5)(4) (West 2006)), including an incapacity to make a reasoned decision about treatment (405 ILCS 5/2-107.1(a-5)(4)(E) (West 2006)).

In a nonemergency, the involuntary administration of medication to a recipient of mental-health services requires the circuit court's permission, granted on written petition. Section 2-107.1(a-5)(1) states as follows:

"(1) Any person 18 years of age or older, including any guardian, may petition the circuit court for an order authorizing the administration of authorized involuntary treat-

ment to a recipient of services. The petition shall state that the petitioner has made a good[-]faith attempt to determine whether the recipient has executed a power of attorney for health care under the Powers of Attorney for Health Care Law [(755 ILCS 45/4-1 through 4-12 (West 2006))] or a declaration for mental[-]health treatment under the Mental Health Treatment Preference Declaration Act [(755 ILCS 43/1 through 75 (West 2006))] and to obtain copies of these instruments if they exist. If either of the above-named instruments is available to the petitioner, the instrument or a copy of the instrument shall be attached to the petition as an exhibit. The petitioner shall deliver a copy of the petition, and notice of the time and place of the hearing, to the respondent, his or her attorney, any known agent or attorney-in-fact, if any, and any guardian, if any, no later than [three] days prior to the date of the hearing." 405 ILCS 5/2-107.1(a-5)(1) (West 2006).

Section 2-107.1(a-5)(4) sets forth what the petitioner must prove in the hearing. It says:

"(4) Authorized involuntary treatment shall not be administered to the recipient unless it has been determined[,] by clear and convincing evidence[,] that all of the following factors are present. In determining whether a

- 5 -

person meets the criteria specified in the following paragraphs (A) through (G), the court may consider evidence of the person's history of serious violence, repeated past pattern of specific behavior, actions related to the person's illness, or past outcomes of various treatment options.

(A) That the recipient has a serious mental illness or developmental disability.

(B) That because of said mental illness or developmental disability, the recipient currently exhibits any one of the following: (i) deterioration of his or her ability to function, as compared to the recipient's ability to function prior to the current onset of symptoms of the mental illness or disability for which treatment is presently sought[;] (ii) suffering[;] or (iii) threatening behavior.

(C) That the illness or disability has existed for a period marked by the continuing presence of the symptoms set forth in item (B) of this subdivision (4) or the repeated episodic occurrence of these symptoms.

(D) That the benefits of the treatment outweigh the harm.

- 6 -

(E) That the recipient lacks the capacity to make a reasoned decision about the treatment.

(F) That other less[-]restrictive services have been explored and found inappropriate.

(G) If the petition seeks authorization for testing and other procedures, that such testing and procedures are essential for the safe and effective administration of the treatment." 405 ILCS 5/2-107.1(a-5)(4) (West 2006).

B. Substituted Judgment

In <u>In re C.E.</u>, 161 Ill. 2d 200, 204, 641 N.E.2d 345, 347 (1994), the trial court found section 2-107.1 of the Code to be unconstitutional and, therefore, denied a petition, pursuant to that section, to authorize the involuntary administration of psychotropic substances to C.E. The Department of Mental Health and Developmental Disabilities appealed. C.E. maintained that section 2-107.1 was unconstitutional because it did not specifically require the application of the substituted-judgment test. <u>C.E.</u>, 161 Ill. 2d at 219-20, 641 N.E.2d at 354. Under the substituted-judgment test, the " 'surrogate decision-maker attempt[ed] to establish, with as much accuracy as possible, what decision the patient [would have made] if he [had been] competent to do so.' " <u>C.E.</u>, 161 Ill. 2d at 220, 641 N.E.2d at 354, quoting <u>In re Estate of Longeway</u>, 133 Ill. 2d 33, 49, 549 N.E.2d 292, 299 (1989).

The supreme court held that although section 2-107.1 did not explicitly

adopt the substituted-judgment test, subsections (d)(4) and (d)(6) required proof that

the benefits of the psychotropic medication outweighed its harms and that other

alternatives for treatment would have been ineffective (405 ILCS 5/2-107.1(d)(4), (d)(6)

(West 1992)); according to the supreme court, the wishes of the recipient while the

recipient was competent would "often be highly pertinent to proof of these two factors."

C.E., 161 Ill. 2d at 220, 641 N.E.2d at 354.  Thus, the supreme court found section 2-

107.1 to be consistent with the substituted-judgment test:

> "Consequently, we conclude that section 2-107.1
>
> permits the court's consideration of the 'substituted judg-
>
> ment' of the mental[-]health recipient, and that the court
>
> respect the wishes expressed by the mental[-]health patient
>
> when the patient was capable of making rational treatment
>
> decisions in his own behalf.  When those wishes have not
>
> been clearly proven, however, the court should be guided by
>
> an objective standard of reasonableness, as shown by the
>
> evidence presented [(i.e., the best-interests test)]."  C.E., 161
>
> Ill. 2d at 220, 641 N.E.2d at 355.

This alternative standard--"an objective standard of what a reasonable person would

prefer under the circumstances of the particular case"--is known as the "best-interests

test."  C.E., 161 Ill. 2d at 221, 641 N.E.2d at 354.

> In Longeway, the supreme court explained:
>
> "Employing th[e] theory [of substituted judgment], the
>
> surrogate first tries to determine if the patient had expressed

- 8 -

[an] explicit intent regarding this type of medical treatment prior to becoming incompetent. [Citation.] Where no clear intent exists, the patient's personal value system must guide the surrogate:

> ' "[E]ven if no prior specific statements were made, in the context of the individual's entire prior mental life, including his or her philosophical, religious[,] and moral views, life goals, values about the purpose of life and the way it should be lived, and attitudes toward sickness, medical procedures, suffering[,] and death, that individual's likely treatment/nontreatment preferences can be discovered." ' " <u>Longeway</u>, 133 Ill. 2d at 49-50, 549 N.E.2d at 299-300, quoting <u>In re Jobes</u>, 108 N.J. 394, 415, 529 A.2d 434, 445 (1987), quoting Newman, <u>Treatment Refusals for the Critically Ill: Proposed Rules for the Family, the Physician and the State</u>, 3 N.Y.L. Sch. Hum. Rts. Ann. 35, 47 (1985).

C. Harmless Error If the Record Lacks Any Indication That a Power of Attorney Exists

In <u>In re Miller</u>, 301 Ill. App. 3d 1060, 1071, 705 N.E.2d 144, 151 (1998), the respondent challenged the form of the petition for involuntary administration of

psychotropic medication in that the petition lacked any allegation that the petitioner had made a good-faith attempt to determine whether the respondent had executed a power of attorney for health care or a declaration for mental-health treatment. We held as follows:

> "[Section 2-107.1(a)-(1)] provide[s] that the petition shall state that the petitioner made a good-faith attempt to determine whether the respondent had executed a power of attorney for health care or a declaration for mental[-]health treatment and obtain copies of those instruments if they exist (405 ILCS 5/2-107.1(a)(1) (West Supp. 1997)). The petition in this case did not contain such an allegation. Nonetheless, we agree with the State that any error here was harmless because neither the record before us nor [the] respondent in his brief indicates that such instruments actually existed in this case. Once again, however, we caution that because noncompliance with the statute in this case does not result in reversal, it would be incorrect to assume that future instances of noncompliance will yield the same result." (Emphasis in original.) Miller, 301 Ill. App. 3d at 1071, 705 N.E.2d at 151.

### D. The Foregoing Principles Applied to the Present Case

In the present case, the petition lacks any allegation that "the petitioner *** made a good[-]faith attempt to determine whether the recipient ha[d] executed a

- 10 -

power of attorney for health care *** or a declaration for mental[-]health treatment ***
and to obtain copies of these instruments if they exist" (405 ILCS 5/2-107.1(a-5)(1)
(West 2006)). The State cites Miller for the proposition that this omission is "harmless
because neither the trial record nor respondent in her brief provided sufficient proof
that a power of attorney or [an advanced directive for health care] actually existed."
(Emphasis added.) In Miller, however, we found harmless error not because the
respondent failed to adduce "sufficient proof" that such instruments actually existed in
his case but because "neither the record before us nor [the] respondent in his brief
indicate[d] that such instruments actually existed." (Emphasis added.) Miller, 301 Ill.
App. 3d at 1071, 705 N.E.2d at 151. This was a far cry from laying a burden of "sufficient
proof" upon the respondent in that case. Laying such a burden upon him would have
been inconsistent with section 2-107.1(a-5)(1), which required of the petitioner a good-
faith effort to ascertain whether the respondent had executed a power of attorney for
health care or a declaration for mental-health treatment and, if such an instrument
existed, a good-faith effort to obtain a copy of it so as to attach it to the petition. 405
ILCS 5/2-107.1(a-5)(1) (West 2006).

According to the supreme court's interpretation of section 2-107.1(a-5)(4)
(405 ILCS 5/2-107.1(a-5)(4) (West 2006)), the trial court, if possible, must apply the
substituted-judgment test before resorting to the best-interests test. C.E., 161 Ill. 2d at
221, 641 N.E.2d at 355. A power of attorney for health care or a declaration for mental-
health treatment would be essential to the application of the substituted-judgment test.
People prepare such documents for the very purpose of expressing their explicit intent
regarding certain types of medical treatment should they become incompetent. See

- 11 -

Longeway, 133 Ill. 2d at 49, 549 N.E.2d at 299. In the present case, both the record and respondent's brief indicate that a power of attorney for health care exists. Even if respondent refused to consent to the release of all her medical records, it does not follow that she was opposed to the release of a particular document, the power of attorney for health care. In fact, in the hearing, she stated where the document could be obtained.

### III. CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment.

Reversed.

STEIGMANN, J., concurs.

COOK, J., dissents.

JUSTICE COOK, dissenting:

I respectfully dissent. While the petition did not state that petitioner made a good-faith attempt to determine whether respondent had executed a power of attorney for health care, the omission is harmless as respondent had the opportunity to produce the alleged power of attorney and has not.

Dr. Eberhardt testified that respondent did not have a power of attorney, guardian, or declaration for mental-health treatment and that she never mentioned having any one of those until her outbursts during the hearing. Because respondent never claimed to have a power of attorney before the hearing, Dr. Eberhardt had no way of knowing if respondent had a power of attorney or how to locate it if it existed. Dr. Eberhardt testified respondent lacked capacity and suffered from bipolar affective disorder with severe and manic psychotic symptoms, euphoric affect, disorganized raging thoughts, grandiose delusions, and increased spending.

The only evidence of respondent's power of attorney is her statement during the hearing that she had a power of attorney. If respondent did not claim to have a power of attorney before the hearing and if she refused to consent to the release of all of her medical records, how was the State supposed to locate the power of attorney if one exists? Unlike records it has in its control, the State has to rely on respondent for assistance in producing a power of attorney. At the very least, respondent has to inform the State that it exists before the hearing and direct the State as to where it might be found. If such a document actually existed, respondent could have objected when the pleading was filed and the document could have been located. Also, respondent was represented at her hearing and is represented on appeal. Neither her hearing counsel

- 13 -

nor her appellate counsel produced a power of attorney. The majority implies the document is easy to obtain as respondent stated where the document could be obtained in the hearing, yet respondent has not attached it to her brief.

The majority distinguishes respondent's case from Miller, which stated "neither the record before us nor [the] respondent in his brief indicat[ed] that such instruments actually existed," by emphasizing that in this case respondent indicated a power of attorney exists. (Emphasis added.) Miller, 301 Ill. App. 3d at 1071, 705 N.E.2d at 151. The only indication of a power of attorney is the statement that one exists made during the hearing by one shown to be delusional and lacking capacity.

A hearing for involuntary administration of medications should not be derailed by a last-second statement of a delusional patient claiming to have a power of attorney when medical professionals testify that the patient never before made such a claim and they had no way of obtaining such a document without the assistance of the patient who had thus far refused to cooperate or even acknowledge her illness.